**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTOPHER J. SPREITZ, *Petitioner-Appellant*, | No. 09-99006 |
| v. | D.C. No. 4:02-CV-00121-JMR |
| CHARLES L. RYAN, Warden, *Respondent-Appellee*. | OPINION |

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued July 11, 2013
Submitted March 4, 2019
San Francisco, California

Filed March 4, 2019

Before: Richard A. Paez, Marsha S. Berzon,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Tallman

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel reversed the district court's denial of habeas corpus relief with respect to Christopher J. Spreitz's death sentence, and remanded, in a case in which Spreitz argued that the Arizona Supreme Court violated *Eddings v. Oklahoma*, 455 U.S. 104 (1982), by refusing to consider, as a matter of law, mitigating evidence of Spreitz's longstanding alcohol and substance abuse on the ground that he did not establish a causal connection between this mitigating evidence and the crime.

The panel held that the district court erred in concluding that Spreitz's claim that the Arizona Supreme Court violated *Eddings* is procedurally defaulted. The panel explained that the first opportunity Spreitz had to raise that claim was before the post-conviction-relief (PCR) court, at which time he did so.

Because the decision of the PCR court – which first declared the claim waived, but proceeded to adjudicate the claim on the merits – was contrary to clearly established Supreme Court precedent, the panel accorded that decision no deference and reviewed Spreitz's *Eddings* claim de novo. The panel concluded that the Arizona Supreme Court violated *Eddings* by impermissibly requiring that Spreitz establish a causal connection between his longstanding substance abuse and the murder before considering and

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

weighing the evidence as a nonstatutory mitigating factor. The panel concluded that the error was not harmless.

The panel affirmed the district court's judgment denying relief with respect to Spreitz's conviction in a concurrently filed memorandum disposition.

Dissenting, Judge Tallman wrote that the record does not establish that either the sentencing court or the Arizona Supreme Court unconstitutionally refused to consider relevant mitigating evidence; and that even if the Arizona courts did violate *Eddings*, Spreitz cannot show that this error had a "substantial and injurious effect or influence" on his ultimate sentence.

## COUNSEL

Timothy M. Gabrielsen (argued), Assistant Federal Public Defender; John M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; Susan B. Fox and Sean Bruner, Law Office of Sean Bruner Ltd., Tucson, Arizona; for Petitioner-Appellant.

Lacey Stover Gard (argued) and Jeffrey A. Zick, Section Chief Counsel; Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section; Mark Brnovich, Attorney General; Office of the Attorney General, Tucson, Arizona; for Respondents-Appellees.

**OPINION**

PAEZ, Circuit Judge:

In 1994, an Arizona jury convicted Christopher J. Spreitz ("Spreitz") of first-degree murder. The victim was thirty-nine year old Ruby Reid ("Reid"). Finding that the cruelty of the murder outweighed any mitigating circumstances, the trial judge sentenced Spreitz to death. Spreitz appeals the district court's denial of his petition for a writ of habeas corpus challenging his conviction and sentence. We affirm the district court's judgment with respect to Spreitz's conviction,[1] and reverse with respect to his sentence.[2]

In challenging his sentence, Spreitz argues that the Arizona Supreme Court unconstitutionally affirmed his death sentence by failing to consider mitigating evidence of his longstanding alcohol and substance abuse. He contends that the state court refused to consider, as a matter of law, this evidence in mitigation because he did not establish a causal connection between the crime and his long-term alcohol and substance abuse. In *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982), the Supreme Court held that under both the Eighth and Fourteenth Amendments, a sentencer in a capital case may not "refuse to consider, *as a matter of law*,

---

[1] We affirm the judgment with respect to Spreitz's conviction in a concurrently filed memorandum disposition.

[2] On February 13, 2015, we vacated submission of Spreitz's case pending final resolution of the en banc proceedings in *McKinney v. Ryan*, 730 F.3d 903 (9th Cir. 2013). In December 2015, the en banc court issued an opinion in *McKinney*. 813 F.3d 798 (9th Circ. 2015) (en banc). After the Supreme Court denied the State's petition for a writ of certiorari, *Ryan v. McKinney*, 137 S. Ct. 39 (2016) (mem), we ordered supplemental briefing on the applicability of *McKinney* to Spreitz's case.

any relevant mitigating evidence" offered by the defendant. *Id.* at 114. Although a sentencer "may determine the weight to be given relevant mitigating evidence . . . they may not give it no weight by excluding such evidence from their consideration." *Id.* at 114–15 (footnote omitted). In interpreting and applying *Eddings*, the Supreme Court has explained that "full consideration of evidence that mitigates against the death penalty is essential if the [sentencer] is to give a reasoned *moral* response to the defendant's background, character, and crime." *Penry v. Lynaugh* (*Penry I*), 492 U.S. 302, 328 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002) (internal quotation marks and citation omitted). Moreover, the Supreme Court has been clear: requiring a defendant to prove a causal nexus between his mitigating evidence and the crime is "a test we never countenanced and now have unequivocally rejected." *Smith v. Texas*, 543 U.S. 37, 45 (2004) (per curiam).

At the time of Spreitz's sentencing, Arizona Revised Statute Annotated § 13-703(G)(1994)**[3]** listed five mitigating factors, and Arizona case law additionally recognized nonstatutory mitigating factors, including, for example, a defendant's difficult family background or mental condition not severe enough to qualify as a statutory mitigating factor. In an en banc decision of our court, *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015), *cert denied*, 137 S. Ct. 39 (2016) (mem), we explained:

> For a period of a little over 15 years in capital cases, in clear violation of *Eddings*, the

---

**[3]** Arizona has since revised its death penalty sentencing scheme. All references to Arizona's Revised Statute Annotated are to those provisions in effect at the time of Spreitz's sentencing.

Supreme Court of Arizona articulated and applied a "causal nexus" test for nonstatutory mitigation that forbade as a matter of law giving weight to mitigating evidence, such as family background or mental condition, unless the background or mental condition was causally connected to the crime.

*Id.* at 802. As a result, we held in *McKinney* that "[a]pplication of the causal nexus test to nonstatutory mitigating factors violated *Eddings*, for it resulted in Arizona courts being entirely forbidden, as a matter of state law, to treat as a mitigating factor a family background or a mental condition that was not causally connected to a defendant's crime." *Id.* Spreitz argues that the Arizona Supreme Court applied its causal nexus test in his case, refusing to consider evidence of his long-term substance and alcohol abuse because he did not adequately establish a causal connection between that history of abuse and his crime.

As in *McKinney*, "the precise question before us is whether the Arizona Supreme Court applied its unconstitutional causal nexus test in affirming [Spreitz]'s death sentence on de novo review."**[4]** *Id.* at 804 (emphasis

---

**[4]** The Arizona Supreme Court is required by statute to undertake an independent review of a death sentence. Ariz. Rev. Stat. § 13-703.01(A). In conducting that review for crimes that occurred before 2002, the court "independently review[s] the trial court's findings of aggravation and mitigation and the propriety of the death sentence. In doing so, [the court] review[s] the record de novo, considering the quality and the strength, not simply the number, of aggravating and mitigating factors." *State v. Lynch*, 357 P.3d 119, 141 (Ariz. 2015) (internal quotation marks and citations omitted), *rev'd on other grounds*, *Lynch v. Arizona*, 136 S. Ct. 1818 (2016).

and internal quotation marks omitted). For the reasons that follow, we conclude that it did.

## I.

### A. Spreitz's Crimes, Conviction, and Sentence

On May 25, 1989, the police arrested Spreitz after discovering Ruby Reid's body in the desert. Upon questioning, Spreitz confessed to murdering Reid. We briefly provide the facts of the murder.

On the evening of May 18, after drinking heavily and being rejected by the woman he was dating, Spreitz "picked up" Reid at a convenience store. *State v. Spreitz* (*Spreitz I*), 945 P.2d 1260, 1264–65 (Ariz. 1997).[5] In his confession, Spreitz claimed that Reid voluntarily left with him and that his understanding was that they would have sex later that evening. *Id.* at 1265. Spreitz further claimed that he drove her out to the desert, where Reid decided she no longer wanted to have sex. *Id.* The two fought as a result. *Id.* Spreitz explained that Reid slapped him and that he responded by punching her in the mouth. *Id.* Spreitz then sexually assaulted Reid—"remov[ing] her clothing and ha[ving] vaginal intercourse with her." *Id.* Spreitz also recounted that he hit Reid in the head multiple times with a rock "to make her stop yelling." *Id.* He explained that he left Reid without knowing whether she was alive or dead. *Id.*

Shortly after leaving Reid in the desert, Spreitz was stopped by a Tucson police department officer. *Id.* at 1264.

---

[5] Our recitation of the facts is adopted from the Arizona Supreme Court's opinion affirming Spreitz's conviction and death sentence.

The officer observed that Spreitz had a ripped shirt, smelled of feces, and appeared to be covered in blood and fecal matter. *Id.* In addition, when detectives later searched Spreitz's car, they found blood spatter in the trunk, some of which was inconsistent with Spreitz's blood characteristics. *Id.* at 1265.

On Monday morning, May 22, Reid's naked and decomposing body was discovered on the outskirts of Tucson. *Id.* At trial, "the medical examiner testified that, due to the advanced state of decomposition, he could not determine the full extent and nature of [Reid]'s injuries." *Id.* Even so, he was able to observe "bruising on the legs, arms, and back; bruising and abrasions on the buttocks; several broken ribs; internal bleeding; a broken jaw; several head lacerations; and a skull fracture where the skull had been 'shoved in.'" *Id.* The medical examiner concluded that Reid had been killed by "blunt-force trauma to the head." *Id.*

In addition to finding Reid's body "[a]t the scene, police detectives observed tire tracks leading back to the pavement, oil stains in the dirt, footprints, and drag marks in the dirt leading away from the body. They also found feces-stained pants, tennis shoes, socks, a used tampon, and a torn brassiere. Two blood-stained rocks lay next to the body." *Id.* A few days later, police arrested Spreitz. *Id.*

On June 2, 1989, a grand jury indicted Spreitz for first-degree murder, Ariz. Rev. Stat. Ann. §§ 13-1105, 13-703; sexual assault, Ariz. Rev. Stat. Ann. §§ 13-406(A) & (B); and kidnapping, Ariz. Rev. Stat. Ann. §§ 13-304(A)(3) & (B). *Spreitz I*, 945 P.2d at 1265. After five years of pre-trial proceedings mostly regarding the admissibility of DNA evidence, a seven-day jury trial began on August 9, 1994. *Id.* at 1266. After the conclusion of the trial, the jury returned guilty verdicts on all three counts: first-degree

murder (both premeditated and felony murder), sexual assault, and kidnapping. *Id.*

Prior to both his aggravation-mitigation and sentencing hearings before the trial judge, Spreitz submitted evidence and a memorandum in support of certain mitigating circumstances. As noted earlier, at the time of Spreitz's sentencing, Arizona's death penalty statutes provided a list of five specific mitigating factors; Arizona case law recognized nonstatutory mitigating factors as well. *See* Ariz. Rev. Stat. Ann. § 13-703(G); *McKinney*, 813 F.3d at 802. Spreitz argued as nonstatutory mitigating factors: "(1) his dysfunctional family life and lack of socialization; (2) a history of alcohol and drug abuse; (3) his expressions of remorse; [(4)] his good behavior while incarcerated; [(5)] his lack of adult convictions; [and (6)] no prior record of violent tendencies." *Spreitz I*, 945 P.2d at 1279. Spreitz argued as statutory mitigating factors: (1) his age at the time of the murder, Ariz. Rev. Stat. Ann. § 13-703(G)(5), and (2) that his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired [due to alcohol use], but not so impaired as to constitute a defense to prosecution," *id.* § 13-703(G)(1); *see Spreitz I*, 945 P.2d at 1279.

Spreitz provided evidence of and argued for all the foregoing mitigating circumstances but focused heavily on a combination of his relationship with his mother and his long history of alcohol and substance abuse. To that end, Spreitz submitted a written report by and presented testimony from an examining psychologist, Dr. Todd Flynn, Ph.D. After conducting interviews and research, Dr. Flynn concluded that Spreitz's longstanding alcohol and substance abuse should be considered as both a statutory and nonstatutory mitigating factor. In his report, which was admitted into

evidence at the aggravation and mitigation hearing, Dr. Flynn repeatedly emphasized Spreitz's longstanding substance abuse[6]:

> By age twelve or thirteen, Chris Spreitz began drinking alcohol and smoking marijuana. By age 15, he drank steadily on weekends and would have a shot of vodka before school.

> The collateral information shows that the alcohol abuse continued to intensify after he left home. A variety of persons . . . described him as a heavy drinker. This includes a second cousin, Scott [Jouett], who saw him to be intoxicated, "a majority of the time," when he was visiting Santa Barbara a week before the current offense. To the interviewing investigator, Mr. [Jouett] also described, "several different occasions when Chris has blackouts," while drinking alcohol.

> It appears completely clear from the available information that Chris Spreitz had a long-standing problem with alcohol which probably reached the level of physical dependence. He described himself as drinking in the morning as early as age 15. Virtually everyone else who spent much time with him described him as a heavy drinker.

---

[6] Dr. Flynn testified consistently with his report. For ease of reference, we refer only to his report.

Ultimately, Dr. Flynn concluded that Spreitz's alcohol abuse, childhood home life, and stunted development, combined with rejection by his girlfriend on the day of the crime, and intoxication at the time of the crime, led to the murder.

At the end of his report, Dr. Flynn summarized his findings and opinions with respect to both statutory and nonstatutory mitigating factors. He opined that both Spreitz's age, Ariz. Rev. Stat. Ann. § 13-703(G)(5), and impaired capacity to appreciate the wrongfulness of his conduct or conform his conduct to the law, Ariz. Rev. Stat. Ann. § 13-703(G)(1), were mitigating statutory factors. As to § 13-703(G)(5), specifically, Dr. Flynn opined that a combination of a disturbing upbringing in a "pathogenic, emotionally neglectful home environment," and "[y]ears of alcoholism intoxication" combined to cause major deficits in Spreitz's social and emotional development. As to § 13-703(G)(1), Dr. Flynn offered a similar conclusion. In light of Spreitz's "history of alcoholism . . . , a significant but unknown degree of alcohol intoxication is likely" on the night of the crime. In addition, Spreitz's "history strongly suggests years of early experiences likely to have caused a build-up of pent-up angry, aggressive feelings toward women generally (and older women especially) which may have burst forth with uncontrollable intensity with or without alcohol intoxication." Dr. Flynn concluded that Spreitz's intoxication on the night of the crime coupled with his early childhood experiences "likely . . . contributed to an uncontrollable outburst of aggression" and inability to control his conduct.

Dr. Flynn also concluded that certain nonstatutory mitigating factors were present. The nonstatutory mitigating factors included, in his opinion: Spreitz's low potential for

future violence, the "failure of [Spreitz's] parents to provide treatment for alcohol abuse in [his] teenage years," and the "emotionally deprived, physically punitive home environment" of Spreitz's upbringing.  Dr. Flynn also emphasized that even if both statutory mitigating factors failed to satisfy the statutory threshold, they may still "be appropriately considered . . . as nonstatutory mitigation."

On November 28, 1994, the trial court conducted an aggravation-mitigation hearing.  At the hearing, Spreitz called three mitigation witnesses: Dr. Flynn and two correctional officers from the Pima County jail, where Spreitz was incarcerated.  The State did not offer any witnesses or evidence at the hearing.  Dr. Flynn testified consistently with his report, as detailed above.

On the same date, a probation officer filed a Pre-Sentence Report, which concluded:

> It appears the defendant became involved in the senseless commission of the instant offense due to his alcohol and drug abuse. After five years in custody, he now admits his substance abuse problem; however, this does not condone his involvement in the offense. It is unfortunate the victim died before the defendant had his revelation.

Prior to the sentencing hearing, Spreitz also submitted several letters from friends, family, and jail personnel.

On December 21, 1994, the trial court conducted a sentencing hearing. Spreitz, Spreitz's counsel, the victim's

sister, and the prosecutor each addressed the court.[7] The prosecutor first disputed the mitigating evidence presented by Spreitz at the mitigation-aggravation hearing. With respect to Spreitz's alcohol abuse, the prosecutor argued that Spreitz's intoxication at the time of the crime did not meet the statutory definition for mitigation under § 13-703(G)(1) because his conduct both during the murder and afterwards demonstrated that "he knew what he was doing." The prosecutor emphasized that the evidence revealed that Reid had been forcibly abducted and stuffed into the trunk of a car, thus forcing her to spend time "contemplat[ing] the uncertainty of her fate." The prosecutor argued that the evidence revealed signs of struggle and that the serious injuries to Reid's body belied any notion that Spreitz did not know what he was doing. The prosecutor further argued that the fact that Reid defecated on herself revealed that she was terrified prior to her murder. In sum, the prosecutor argued that given both the heinous nature of the crime and the manner in which Reid suffered, a finding in aggravation that Reid was murdered in an "especially cruel manner" was warranted.

After a short recess, the sentencing judge rendered oral findings addressing the aggravation and mitigation issues. He then imposed a sentence of death.[8] Following the

---

[7] The trial court did not entertain argument at the conclusion of the aggravation-mitigation hearing. As a result, counsel addressed the aggravation-mitigation evidence and sentence options at the subsequent sentencing hearing.

[8] *Ring v. Arizona*, 536 U.S. 548 (2012), the Supreme Court decision holding judge-sentencing in capital cases unconstitutional, had yet to be decided.

hearing, the sentencing judge filed a judgment setting forth written findings.

The judge first found one aggravating circumstance— that the offense was committed in an "especially cruel manner." Ariz. Rev. Stat. Ann. § 13-703(F)(6). The judge proceeded to review the "many factors [that were] submitted in mitigation," ultimately finding five mitigating circumstances of various levels of significance:

> [1] A mitigating circumstance defense submitted was that the defendant had an extremely disruptive childhood . . . . The court finds the home was sub-normal, not even a minimally healthy one for developing children; and it is obvious the defendant suffered a disruptive middle childhood—had a punitive, controlling, cold mother, who he could not please, no matter what he did.
>
> *The defendant in his life turned to substance abuse—alcohol and some suggestion he was using cocaine and other drugs. However, the court does not find such is a mitigating circumstance that impaired his ability to make a judgment on whether he was acting rightfully or wrongfully in the death of the victim.*
>
> *The defendant's history of intoxication is longstanding. He had been abusing substances for close to ten years of his life at the time of this offense when he was twenty-two. Again, the court does not believe that the substance abuse or intoxication impaired*

*the defendant's ability and capacity to appreciate the wrongfulness of his conduct to any significant degree. . . . The court does not believe intoxication is any sort of mitigating circumstance.*

. . .

[2] The court acknowledges that the defendant has begun a process of improvement and emotional growth while confined at the Pima County Jail, where he has taken part in education programs. Correctional officers have testified he was a prisoner who caused no problems.

[3] The age of the defendant at the time of the offense (twenty-two) is not a mitigating circumstance in and of itself. Immaturity probably is, but the court does not believe immaturity was a significant mitigating circumstance.

[4] The court finds that Mr. Spreitz has no criminal history of a felony nature—there is no history or propensity for acts of violence.

[5] The court believes the defendant is capable of being rehabilitated. The court does not know whether he has a good prognosis for the future, but the court believes he can be rehabilitated.

In conclusion, the judge found that "the mitigating circumstances [were] not sufficient to balance the

aggravating circumstances, nor [were] they sufficiently substantial to call for leniency." He thus imposed a death sentence as to the first-degree murder conviction.

## B. Spreitz's Appeal and Post-Conviction Proceedings

Spreitz appealed his conviction and sentence to the Arizona Supreme Court with the assistance of new counsel. The Arizona Supreme Court affirmed Spreitz's conviction and sentence after conducting its own independent review of the record.[9] In reviewing the mitigating evidence, the court found four of the five mitigating circumstances that the sentencing judge had found, declining to find Spreitz's good behavior while in jail awaiting sentencing as a mitigating circumstance. *Spreitz I*, 945 P.2d at 1280–81. The court explained:

> [1] "We agree with the sentencing judge that defendant's upbringing was subnormal." *Id.* at 1280.

> [2] "We also find that the sentencing judge . . . properly found that his emotional immaturity was not a significant mitigating factor." *Id.* at 1281.

> [3] "We agree that the record supports the sentencing judge's findings that defendant had no previous adult felony convictions, no prior acts of violence, and

---

[9] *See* note 4, *supra*. Because the Arizona Supreme Court conducted a de novo review, we focus on its analysis, rather than, as the dissent does in part, the analysis by the trial court.

[4] that the defendant is capable of rehabilitation." *Id.*

The Arizona Supreme Court also added that it considered remorse as an additional nonstatutory mitigating factor. *Id.*

The court addressed Spreitz's history of alcohol and substance abuse as follows:

> The record demonstrates defendant's longtime substance abuse problems. We note, however, that defendant's general problems with substance abuse are not essential to our decision here. We therefore decline to conclude that defendant was impaired by alcohol consumption to an extent that it interfered with his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." A[riz]. R[ev]. S[tat]. [Ann.] § 13-703(G)(1); *see also State v. Medrano*, 185 Ariz. 192, 194, 914 P.2d 225, 227 (1996) (citing [*State v.*] *Stokley*, 182 Ariz. [505,] 520, 898 P.2d [454,] 469 [1995]).

*Id.* at 1280–81. In the only other portion of its opinion addressing Spreitz's history of alcohol and substance abuse, the court said:

> The sentencing judge found that defendant's ability to appreciate the wrongfulness of his conduct was not impaired on the night of the murder to any significant extent by substance abuse, emotional disorders, situational stress, or by a combination of these. Our review of

> the record convinces us that the trial court's
> finding was proper.

*Id.* at 1281.

The Arizona Supreme Court agreed with the trial court's aggravation finding that the murder was done in an especially cruel manner, *id.* at 1279, and then proceeded to reweigh the applicable aggravating and mitigating factors, finding that "the aggravating circumstance of especial cruelty in defendant's murder of Ruby Reid outweigh[ed] all factors mitigating in favor of leniency." *Id.* at 1282. It affirmed his death sentence. *Id.* at 1283. Spreitz filed a petition for a writ of certiorari, which the United States Supreme Court denied. *Spreitz v. Arizona*, 523 U.S. 1027 (1998) (mem).

In March 2000, represented again by new counsel, Spreitz filed a petition for post-conviction relief in the Arizona Superior Court ("PCR court"). *See* Ariz. R. Crim. P. 32.1. Spreitz alleged, *inter alia*, that the sentencing judge and the Arizona Supreme Court committed error by failing to consider his history of alcohol and substance abuse as a nonstatutory mitigating factor apart from its causal connection to the murder—i.e., *Eddings* error. He also alleged that his appellate counsel was ineffective for failing to raise the sentencing judge's *Eddings* error on appeal to the Arizona Supreme Court. Spreitz additionally raised several new claims of trial-counsel-ineffectiveness.

The PCR court denied all of Spreitz's claims and entered an order dismissing his petition for post-conviction relief. In Part 3 of its order, the PCR court discussed Spreitz's claims of "nexus-error"—that both the trial court and the Arizona Supreme Court erred when they failed to consider Spreitz's longstanding alcohol and substance abuse on the basis that

Spreitz had failed to establish a causal nexus between the long-term substance abuse and the murder.[10] The PCR court dismissed the claim[11] as waived, reasoning that Spreitz had failed to raise the issue on direct appeal. Nonetheless, the PCR court addressed the merits of the nexus-error claim in the course of analyzing Spreitz's argument that his appellate counsel was ineffective for failing to raise it. In doing so, the PCR court explained that the claim failed because:

> [I]t must be demonstrated, under A[riz]. R[ev]. S[tat]. [Ann.] § 13-703(G)(l), that there is a causal link between the history of alcohol or substance abuse and the offense itself. *E.g.*, *State v. Stokley*, [] 182 Ariz. [505,] 523 [898 P.2d 454, 472 (Ariz. 1995)]. Without some basis for explaining or defining the individual's behavior at the time of the offense, the Petitioner's history of alcohol or substance abuse would be inconsequential (which is exactly what the trial court and Supreme Court concluded). *State v. Kayer*, 194 Ariz. 423, 984 P.2d 81 ([Ariz.] 1999).
>
> At times, the court can and should consider an individual's long-term alcoholism and

---

[10] For ease of reference, we refer to the Arizona courts' alleged error as "nexus-error."

[11] Although Spreitz raised, and the PCR court recognized, two distinct claims—one with respect to the sentencing court and one with respect to the Arizona Supreme Court—the PCR court's analysis treats the claims as one and the same and refers to them in the singular. To reflect accurately the PCR court's discussion, our summary here likewise refers to a singular "claim."

substance abuse, usually in conjunction with other factors or diagnosis, as non-statutory mitigation. However, the impact or effect of the alcoholism or substance abuse must be substantial and of such severity that it provides a sufficient basis for explaining the defendant's conduct, character or ability to control his behavior at the time of the offense. [Citations omitted].

As previously discussed, there is no evidence in Petitioner's case to suggest that he suffered any long-term effects from his alcohol or drug abuse that precluded him from controlling his behavior. Petitioner did not suffer from any cognitive or emotional deficits that rendered him incapable of controlling his conduct. Therefore, the trial court did not err in failing to find Petitioner's history of alcohol or substance abuse as a separate, non-statutory mitigating factor. [Citation omitted].

Spreitz filed a petition for review in the Arizona Supreme Court challenging the PCR court's judgment. The Arizona Supreme Court summarily affirmed the PCR court's merits determination with respect to Spreitz's *Eddings* claims. *State v. Spreitz* (*Spreitz II*), 39 P.3d 525, 527 (Ariz. 2002).

Spreitz filed his federal habeas petition in February 2003. He alleged in claim seven that the sentencing judge and the Arizona Supreme Court had both committed nexus-error with respect to his long-time alcohol and substance abuse, and that appellate counsel was ineffective for failing

to argue the sentencing judge's nexus-error on direct appeal to the Arizona Supreme Court.

The district court denied all of Spreitz's claims. With respect to the alleged nexus-error by both the sentencing court and the Arizona Supreme Court, the district court found the claims procedurally barred, relying on the PCR court's determination that Spreitz had waived the claims because he could have raised them on direct appeal but failed to do so. The district court concluded that Spreitz had properly exhausted his ineffective assistance of appellate counsel claim, and thus addressed the alleged nexus-error in that context, ultimately concluding it was not meritorious. Accordingly, the district court concluded that "appellate counsel's failure to raise this issue on appeal does not constitute ineffectiveness."

Spreitz timely appealed.

## II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), and review de novo the district court's denial of a writ of habeas corpus. *Poyson v. Ryan*, 879 F.3d 875, 887 (9th Cir. 2018). Because Spreitz filed his federal habeas petition after April 24, 1996, he must satisfy the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, we may not grant habeas relief unless the state's adjudication of Spreitz's claim (1) "was contrary to . . . clearly established federal law[] as determined by the Supreme Court," (2) "involved an unreasonable application of" such law, or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (28 U.S.C. § 2254(d)). "In making this determination, we look to the last state court decision to address the claim," *White v. Ryan*, 895 F.3d 641,

665 (9th Cir. 2018) (citing *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)), which for Spreitz's nexus-error claim is that of the PCR court.

Spreitz argues that the PCR court's decision was "contrary to" *Eddings v. Oklahoma*, 455 U.S. 104 (1982). "A state court's decision is contrary to clearly established federal law if it 'applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases' or arrives at a different result in a case that 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court.'" *Castellanos v. Small*, 766 F.3d 1137, 1146 (9th Cir. 2014) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "If the state court applies a legal standard that contradicts clearly established [Supreme Court] law, we review de novo the applicant's claims, applying the correct legal standard to determine whether the applicant is entitled to relief." *Id.* (citation omitted).

## III. Discussion

As discussed *supra*, the precise question we must decide is whether the Arizona Supreme Court applied its unconstitutional causal nexus test in violation of *Eddings* when it affirmed Spreitz's death sentence. To answer that question, we must first determine whether the claim is properly before us. After concluding that Spreitz's claim could not have been procedurally defaulted, we turn to the level of deference we must accord the PCR court's ruling on Spreitz's *Eddings* claim under AEDPA. Because the PCR court's decision was contrary to clearly established Supreme Court precedent, we accord that decision no deference and review Spreitz's *Eddings* claim de novo. We conclude that the Arizona Supreme Court violated *Eddings* by impermissibly requiring that Spreitz establish a causal

connection between his longstanding substance abuse and the murder before considering and weighing the evidence as a nonstatutory mitigating factor. Finally, having determined that the Arizona Supreme Court applied an unconstitutional causal nexus test in its sentencing procedure, we turn to whether the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). We conclude that the error was not harmless and therefore reverse the district court's judgment with respect to Spreitz's sentence.

## A.

Under the doctrine of procedural default, a federal habeas court "will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "We review de novo a district court's conclusion that a claim is procedurally defaulted." *Cooper v. Neven*, 641 F.3d 322, 326 (9th Cir. 2011).

Here, the district court concluded that both of Spreitz's *Eddings* claims—that the sentencing court *and* the Arizona Supreme Court applied an unconstitutional causal nexus test—were procedurally defaulted, because the PCR court found each claim waived for failure to raise them on direct appeal. This conclusion, however, is erroneous with respect to Spreitz's claim that the Arizona Supreme Court violated *Eddings*. After all, "[t]he Arizona Supreme Court reviews capital sentences de novo, making its own determination of what constitute[s] legally relevant aggravating and mitigating factors, and then weighing those factors independently. Ariz. Rev. Stat. Ann. § 13-755. The Arizona Supreme Court 'conducts a thorough and independent review of the record and of the aggravating and mitigating evidence to determine whether the sentence is justified.'"

*McKinney*, 813 F.3d at 819 (emphasis removed) (quoting *State v. McKinney*, 917 P.2d 1214, 1225 (Ariz. 1996)). Spreitz could not have raised on direct appeal his claim that the Arizona Supreme Court violated *Eddings* in performing its de novo review of Spreitz's death sentence. The first opportunity he had to raise that claim was before the PCR court, at which time he did so. Thus, Spreitz's claim is not procedurally defaulted and is properly before us.[12]

## B.

Because Spreitz's claim that the Arizona Supreme Court applied an unconstitutional causal nexus test to his nonstatutory mitigating evidence of long-time alcohol and

---

[12] The district court declined to issue a certificate of appealability ("COA") on Spreitz's substantive *Eddings* claim, which he raised as claim 1.7 on pages 108 through 111 in his federal habeas petition. Although Spreitz did not present his *Eddings* claim as a separate uncertified issue, we may grant a COA regarding any uncertified issue discussed in a petitioner's opening brief. *See* 9th Cir. R. 22-1(e). Spreitz's opening brief discusses the Arizona courts' *Eddings* errors. We therefore may exercise our discretion to expand the COA to encompass the *Eddings* claim.

To obtain a COA under 28 U.S.C. § 2253(c), Spreitz must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Reasonable jurists could debate the merits of Spreitz's *Eddings* claim. We thus exercise our discretion and expand the COA to encompass Spreitz's substantive *Eddings* claim with respect to the Arizona Supreme Court. We acknowledge that under Ninth Circuit Rule 22-1(f), the State would normally be afforded an opportunity to submit supplemental briefing on the uncertified *Eddings* issue. Here, however, the *Eddings* issue has been exhaustively briefed, in the context of Spreitz's appellate counsel's alleged ineffectiveness before the Arizona Supreme Court. Additional briefing is unwarranted.

substance abuse is properly before us, we next determine the level of deference to accord the PCR court's adjudication of that claim. As discussed above, although the PCR court first declared the claim waived, it proceeded to adjudicate the claim on the merits. In denying the claim, the PCR court explained:

> Without some basis for explaining or defining the individual's behavior at the time of the offense, [Spreitz]'s history of alcohol or substance abuse would be inconsequential (which is exactly what the trial court and Supreme Court concluded).

> At times, the court can and should consider an individual's long-term alcoholism and substance abuse, usually in conjunction with other factors or diagnosis, as non-statutory mitigation. However, the impact or effect of the alcoholism or substance abuse must be substantial and of such severity that it provides a sufficient basis for explaining the defendant's conduct, character, or ability to control his behavior at the time of the offense.

> . . . .

> As previously discussed, there is no evidence in [Spreitz]'s case to suggest that he suffered any long-term effects from his alcohol or drug abuse that precluded him, from controlling his behavior. Petitioner did not suffer from any cognitive or emotional deficits that rendered him incapable of controlling his conduct. Therefore, the trial

> court did not err in failing to find [Spreitz]'s history of alcohol or substance abuse as a separate, non-statutory mitigating factor.

In other words, the PCR court concluded that Spreitz's longstanding alcohol and substance abuse could only be considered a nonstatutory mitigating factor if it "provide[d] a sufficient basis for explaining the defendant's conduct, character, or ability to control his behavior *at the time of the offense*." This discussion both accurately described the causal nexus test and approved of it.

Such reasoning is contrary to clearly established federal law. As explained in *McKinney*, "the causal nexus test clearly violates *Eddings*." 813 F.3d at 810. Therefore, "[b]ecause the state court used the wrong standard, we need not defer to that decision." *Hardy v. Chappell*, 849 F.3d 803, 820 (9th Cir. 2016).

## C.

Because the PCR court's decision was "contrary to" clearly established law, we review de novo the merits of Spreitz's *Eddings* claim. 28 U.S.C. § 2254(d)(1). We therefore consider whether the Arizona Supreme Court applied its unconstitutional causal nexus test in reviewing and affirming Spreitz's death sentence. In so doing, "we look only to the decision of th[e Arizona Supreme Court], . . . only [considering] . . . the decision of the sentencing judge . . . to the degree it was adopted or substantially incorporated by the Arizona Supreme Court." *McKinney*, 813 F.3d at 819.

**1.**

Our decision in *McKinney* frames our consideration of the Arizona Supreme Court's decision and Spreitz's claim. *McKinney* makes clear that the Arizona Supreme Court consistently articulated and applied its unconstitutional causal nexus test during the period in which Spreitz's death sentence was litigated in the trial court and reviewed by the Arizona Supreme Court. *Id.* at 824. Moreover, *McKinney* makes plain that although on habeas review, we generally apply a "presumption that state courts know and follow the law," "the Arizona Supreme Court's consistent articulation and application of its causal nexus test . . . make such a course impossible." *Id.* at 803 (internal quotation marks and citation omitted). In appeals heard from the late 1980s until at least 2002, *see State v. Canez*, 42 P.3d 564, 594 (Ariz. 2002), it was unmistakably clear that "the Arizona Supreme Court did not know and follow federal law." *Id.* (internal quotation marks omitted).[13] Therefore, just as in *McKinney* and subsequent cases applying *McKinney*, *see, e.g.*, *Poyson*, 879 F.3d at 889, "the presumption" that the Arizona Supreme Court knew and followed the law "is rebutted" here as well. *McKinney*, 813 F.3d at 804.

That said, *McKinney* does not dispose of Spreitz's claim. We must still review the Arizona Supreme Court's decision to determine whether it did, in fact, apply its unconstitutional causal nexus test in Spreitz's case. In doing so, we are mindful of the fact that at the time the Arizona Supreme Court decided Spreitz's appeal, "if there is to be a presumption, it is that the Arizona Supreme Court violated

---

[13] In 2005, the Arizona Supreme Court repudiated its earlier nexus test. *See State v. Anderson*, 111 P.3d 369, 391–92 (Ariz. 2005).

the dictates of *Lockett* and *Eddings*." *Greenway v. Ryan*, 866 F.3d 1094, 1095 (9th Cir. 2017).

**2.**

Against this backdrop, we are convinced that the Arizona Supreme Court applied its causal nexus test with respect to Spreitz's evidence of longstanding alcohol and substance abuse in violation of *Eddings*.

We quote again the Arizona Supreme Court's discussion of Spreitz's history of alcohol and substance abuse:

> The record demonstrates defendant's longtime substance abuse problems. We note, however, that defendant's general problems with substance abuse are not essential to our decision here. We therefore decline to conclude that defendant was impaired by alcohol consumption to an extent that it interfered with his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." A[riz]. R[ev]. S[tat]. [Ann.] § 13-703(G)(1); *see also State v. Medrano*, 185 Ariz. 192, 194, 914 P.2d 225, 227 (1996) (citing *Stokley*, 182 Ariz. at 520, 898 P.2d at 469).
>
> . . . .
>
> The sentencing judge found that defendant's ability to appreciate the wrongfulness of his conduct was not impaired on the night of the murder to any significant extent by substance abuse, emotional disorders, situational stress,

> or by a combination of these.  Our review of
> the record convinces us that the trial court's
> finding was proper.

*Spreitz I*, 945 P.2d at 1280–81.    This discussion
demonstrates that the Arizona Supreme Court primarily
concluded that Spreitz failed to show statutory mitigation
under Ariz. Rev. Stat. Ann. § 13-703(G)(1) based on his
intoxication on the night of the murder.  "When applied
solely in the context of statutory mitigation under
§ 13-703(G)(1), the causal nexus test does not violate
*Eddings*."  *McKinney*, 813 F.3d at 810.

The plain text of the Arizona Supreme Court's decision,
however, also clearly demonstrates that the court did not
solely apply its causal nexus test to Spreitz's evidence of
statutory mitigation.  The court initially recognized Spreitz's
"general problems with substance abuse"—evidence that
should have been relevant as nonstatutory mitigation—but
concluded those problems were "not essential to [its]
decision" because they did not show Spreitz was "impaired
on the night of the murder."  *Spreitz I*, 945 P.2d at 1280–81.
In other words, the court did not acknowledge the relevance
of longtime substance abuse as nonstatutory mitigation in the
absence of a causal relationship to the crime.  Instead, the
court held that because there was no causal relationship,
Spreitz's long-term alcohol abuse was not of significance—
i.e. "not essential"—to the court's overall determination of
either statutory or nonstatutory mitigation.

The Supreme Court, however, has been clear that "'full
consideration of evidence that mitigates against the death
penalty *is essential* if the sentencer is to give a reasoned
*moral* response to the defendant's background, character,
and crime.'"  *McKinney*, 813 F.3d at 812 (first emphasis

added) (quoting *Penry I*, 492 U.S. at 319, 328). Accordingly, "*Eddings* requires that '[t]he sentencer must also be able to consider and give effect'" to *any* relevant mitigation evidence proffered by the defendant, which includes evidence going toward nonstatutory mitigation. *Id.* (quoting *Penry I*, 492 U.S. at 319, 328). The Arizona Supreme Court's refusal to consider Spreitz's alcohol and substance abuse beyond its connection, if any, to Reid's murder constitutes application of its unconstitutional causal nexus test to relevant nonstatutory mitigation evidence.

Our understanding of the Arizona Supreme Court's opinion is bolstered by the fact that in its discussion of Spreitz's longstanding alcohol and substance abuse, the court cited to a prior decision that likewise applied the unconstitutional causal nexus test, *State v. Medrano*, 914 P.2d 255 (Ariz. 1996). In *McKinney*, we explained that in *Medrano*, the Arizona Supreme Court upheld the sentencing judge's determination that the defendant's cocaine use failed as a nonstatutory mitigating circumstance because he did not show that it contributed to his conduct on the night of the murder. *McKinney*, 813 F.3d at 825–26. In so doing, "[t]he Arizona Supreme Court applied the causal nexus test." *Id.* at 825. Although the Arizona Supreme Court's citation to *Medrano* is not dispositive, it certainly corroborates our understanding of the court's opinion. *See also Poyson*, 879 F.3d at 890 (emphasizing, among other considerations, that the Arizona Supreme Court cited a passage from a case specifically identified in *McKinney* as applying the unconstitutional causal nexus test in order to conclude that the state court also applied that test to Poyson's evidence). Moreover, as we explained in *McKinney*, "the Arizona Supreme Court applied its unconstitutional nexus test consistently" for fifteen years because it had "a mistaken understanding of *Eddings*." 813 F.3d at 826. It is thus

entirely logical that in citing the exact portion of *Medrano* where it previously applied its causal nexus test, the Arizona Supreme Court was applying the same test in Spreitz's case. *See id.* at 821; *see also Poyson*, 879 F.3d at 890.

We find further support for our understanding of the Arizona Supreme Court's unconstitutional treatment of Spreitz's alcohol and substance abuse when we compare it with the manner in which the court discussed other mitigating factors. As detailed earlier, in evaluating the evidence of Spreitz's general history of alcohol and substance abuse, the court stated that this evidence was "not essential" to its decision. *Spreitz I*, 945 P.2d at 1280. By contrast, when the court considered other mitigating factors, it specifically discussed the *weight* it would give those factors, as opposed to simply dismissing them outright. For example, when discussing Spreitz's subnormal upbringing, the court stated, "Although we recognize defendant's upbringing as a mitigating circumstance, we accord it *little weight*." *Id.* at 1280 (emphasis added). As another example, after "finding that since his arrest, [Spreitz] has demonstrated remorse," the court stated that his "remorse for his actions does *little* to counterbalance especial cruelty as a serious aggravating circumstance." *Id.* at 1281 (emphasis added). And finally, when discussing the sentencing judge's determination regarding Spreitz's emotional immaturity, the court stated, "We also find that the sentencing judge . . . properly found that his emotional immaturity was not a *significant* mitigating factor." *Id.* (emphasis added). In other words, when the Arizona Supreme Court wanted to assign weight to a given factor, it said so. This pattern stands in stark contrast to the court's conclusion that anything related to Spreitz's long-term alcohol or substance abuse that fell short of the statutory definition could not serve as mitigation. *Id.* at 1280–81.

Finally, as also discussed earlier, the PCR court distinctly interpreted the Arizona Supreme Court's decision as having applied a causal nexus test. The PCR court explained that "[w]ithout some basis for explaining or defining the individual's behavior at the time of the offense, [Spreitz]'s history of alcohol or substance abuse would be inconsequential (*which is exactly what the* trial court and *Supreme Court concluded*)." Moreover, in articulating how the Arizona Supreme Court had applied its causal nexus test in Spreitz's direct appeal, the PCR court, as had the Arizona Supreme Court, cited to a decision of the Arizona Supreme Court indisputably applying an unconstitutional nexus test, *State v. Kayer*, 984 P.2d 31 (Ariz. 1999). *See McKinney*, 813 F.3d at 816 (explaining that *Kayer* held "that the defendant's mental impairment 'was not established as a nonstatutory mitigating factor' in part because 'defendant offered no evidence to show the requisite causal nexus that mental impairment affected his judgment or his actions at the time of the murder'" (quoting *Kayer*, 984 P.2d at 46)). The fact that the PCR court interpreted the Arizona Supreme Court's opinion as we do—and then itself applied the constitutionally erroneous nexus test—lends further support to our reading.

We recognize that the Arizona Supreme Court's decision on the particular issue before us was framed by language that might, in a decisional vacuum, suggest the court knew, understood, and applied the law with respect to *Eddings*. The court acknowledged that Spreitz argued that his history of alcohol and drug abuse served as both a statutory and nonstatutory mitigating factor. *Spreitz I*, 945 P.2d at 1279. It then stated that it "must consider any aspect of the defendant's character or record . . . relevant to determining whether the death penalty should be imposed." *Id.* And finally, in reaching the conclusion to affirm Spreitz's death

sentence, the court explained that it had "examin[ed] the entire record and reweigh[ed] the applicable aggravating and mitigating factors." *Id.* at 1281–82.

The Arizona Supreme Court's acknowledgment of what Spreitz argued does not indicate that it relied on or accepted that argument as correct. Further, we cannot, given *McKinney*, *Poyson*, and *Greenway*, proceed in a decisional vacuum.

Considered in light of the baseline that the Arizona Supreme Court was consistently applying its unconstitutional causal nexus test in death penalty cases at the time Spreitz's appeal was decided, as well as its citations to cases held in *McKinney* to be applying that standard, we are confident that the manner in which the Arizona Supreme Court disposed of Spreitz's evidence of his longstanding alcohol and substance abuse confirms that it applied the causal nexus test it was using during that period.

*Styers v. Schriro*, 547 F.3d 1026 (9th Cir. 2008) supports this conclusion. *Styers* stated that the mere fact that "the Arizona Supreme Court stated that it had 'considered all of the proffered mitigation,'" is not sufficient to contradict the fact that "its analysis prior to this statement indicated otherwise." *Id.* at 1035 (internal citation omitted). In *Styers*, notwithstanding assertions to the contrary, the Arizona Supreme Court refused to consider evidence of the defendant's Post Traumatic Stress Disorder ("PTSD") because he had failed to connect it causally to his crimes. *Id.* Here, too, the Arizona Supreme Court's actual analysis of Spreitz's longstanding alcohol and substance abuse reveals that it refused to consider this particular aspect of Spreitz's character free from any connection to the crime. Rather, the court's discussion demonstrates that in evaluating Spreitz's long-term alcohol and substance abuse, it applied a causal

nexus test in violation of *Eddings* and therefore refused, as a matter of law, to consider it in assessing Spreitz's evidence of nonstatutory mitigating circumstances.

To the extent the state argues the Arizona Supreme Court's opinion is ambiguous as to whether it applied an unconstitutional causal nexus test or not—and we believe that it is not—*McKinney* requires resolving that ambiguity in favor of Spreitz. *McKinney* held it clear that the Arizona Supreme Court "*consistently* articulated and applied its causal nexus test" at the time the trial court imposed Spreitz's death sentence and the Arizona Supreme Court reviewed and affirmed that sentence. *McKinney*, 813 F.3d at 803 (emphasis in original). Again, "if there is to be a presumption, it is that the Arizona Supreme Court violated the dictates of *Lockett* and *Eddings*." *Greenway*, 866 at 1095.

In sum, because (1) the Arizona Supreme Court clearly stated that Spreitz's longstanding alcohol and substance abuse was "not essential" to its decision, which was in line with the court's consistent practice of applying a causal nexus test; (2) the Arizona Supreme Court cited to *Medrano*, in which it had previously articulated a causal nexus test; (3) the Arizona Supreme Court carefully laid out the weight it would accord other mitigating factors as opposed to simply ignoring them; and (4) the PCR court likewise interpreted the Arizona Supreme Court's opinion as applying a causal nexus test, we conclude that the Arizona Supreme Court held, as a matter of law, that Spreitz's long-term alcohol and substance abuse was not a nonstatutory mitigating factor and therefore refused to consider it. This holding was in clear violation of *Eddings*.

**3.**

In light of our conclusion that the Arizona Supreme Court failed to comply with *Eddings*, we must next decide whether Spreitz was prejudiced by this error. On federal habeas review, relief is warranted if an error "had substantial and injurious effect or influence" on the challenged decision. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The petitioner is "not entitled to habeas relief" unless he can establish that the error "resulted in actual prejudice." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (internal quotation marks omitted). Here, because we are "in grave doubt about whether [the Arizona Supreme Court's] error of federal law had substantial and injurious effect or influence in determining [whether to affirm Spreitz's death sentence], that error is not harmless. And, [Spreitz] must win." *McKinney*, 813 F.3d at 822 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

We previously have required resentencing based on prejudicial *Eddings* error where the Arizona Supreme Court refused to consider, as a matter of law, mitigation evidence "central to" the petitioner's "plea for leniency." *See id.* at 823; *see also Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000) (concluding that a penalty-phase jury instruction error was not harmless under *Brecht* because "it undermined the very core of Coleman's plea for life").[14] For the reasons that follow, it is clear that Spreitz's long-term

---

[14] We do not suggest that *Brecht* prejudice may *only* be established if inappropriately considered mitigating evidence was at "the very core of [a defendant's] plea for life." *Coleman*, 210 F.3d at 1051. It is conceivable that other forms of *Eddings* error could have "a substantial and injurious effect" on a defendant's sentence if they would be significant to the *sentencer*, despite the *defendant's* failure to rely on them as central to his or her argument. *Brecht*, 507 U.S. at 623.

alcohol and substance abuse was important mitigation evidence, and was so closely related as to become central to his plea for leniency. The Arizona Supreme Court's refusal to consider that evidence had a substantial and injurious effect on its sentencing determination that requires resentencing.

While a defendant's evidence of longstanding alcohol and/or substance abuse can be probative mitigation evidence on its own, a "history of substance abuse [is] *substantially* mitigating when . . . *combined* with other mitigating evidence." *Henry v. Ryan*, 720 F.3d 1073, 1090 (9th Cir. 2013) (emphasis added) (listing cases and holding that the defendant's alcoholism "would not have had a substantial and injurious effect" because it "st[ood] alone, was similar to evidence already considered by the sentencing courts, and was of limited probative value") (footnote omitted).[15] Here, Spreitz's evidence regarding his history of alcohol and substance abuse—spanning nearly half his life by the time he committed the crime at the age twenty-two—was the

---

[15] The dissent makes much of *Henry*, suggesting it dictates the outcome of our prejudice analysis. Dissent at 29. Not so. In that case, the state court had found that Henry's intoxication on the day of the murder did constitute a statutory mitigating factor but was not sufficiently substantial to outweigh the two aggravating factors. *Henry*, 720 F.3d at 1090. Henry argued that the state court erred by failing to consider evidence of his "historical alcoholism" in addition to his intoxication on the day of the crime. *Id.* We concluded that any error was harmless because the history of substance abuse "was similar to evidence already considered by the sentencing courts and was of limited probative value." *Id.* In other words, because the state court had found insufficient evidence of alcohol use that *was* tied to the murder, we could not conclude that general alcohol use that was not tied to the murder could have been determinative. Here, by contrast, the Arizona Supreme Court found that Spreitz's evidence of intoxication did not rise to the level of statutory mitigation. Accordingly, there is not the same contextual harmlessness problem as in *Henry*.

factor on which much of his other mitigation evidence turned.

In both his report and his testimony, Dr. Flynn discussed at length the extent to which alcohol consumed Spreitz's life in the decade leading up to Reid's murder. Spreitz began drinking when he was twelve or thirteen; by fifteen, he was drinking steadily on the weekends and drinking vodka before school. According to Dr. Flynn, "[d]rug and alcohol abuse dominated his teenage years." After he left home, Spreitz's drinking intensified: Spreitz experienced blackouts multiple times and, a week before the murder, Spreitz was "intoxicated a majority of the time." Dr. Flynn concluded that "[i]t appears completely clear from the available information that . . . Spreitz had a long-standing problem with alcohol which probably reached the level of physical dependence."

Critically, Spreitz's decade-long struggle with alcohol and other addictive substances reflects the true gravity of his "subnormal upbringing," a mitigating circumstance recognized by the Arizona Supreme Court. *See Spreitz I*, 945 P.2d at 1280. Both Spreitz's sentencing memorandum and Dr. Flynn detailed how his difficult childhood led to Spreitz's early dependence on alcohol. For instance, Dr. Flynn explained that Spreitz turned to alcohol as a coping mechanism to deal with the "pervasive subabusive emotional battering and neglect that he received from his mother," whom he described as "punitive, controlling, [and] emotionally cold." Dr. Flynn found that Spreitz "slipped quietly into alcoholic numbness" after his "failure to live up to his mother's standards or earn her love." Reflecting parental neglect, Spreitz's parents "failed to arrange . . . for an appropriate rehabilitation program" even though "[v]irtually everyone . . . who spent much time with him

described him as a heavy drinker." "Given the intensity and duration" of Spreitz's reliance on alcohol, "the mother (and step-father) were either so uninvolved with him to have failed to notice the problem, or they were aware of it and failed to arrange (or attempt to arrange) for an appropriate rehabilitation program."

Because Spreitz did not receive treatment during his teenage years, his dependence on alcohol only deepened. In his sentencing memorandum, Spreitz, too, argued that his long-term alcohol abuse reflects the impact that his upbringing by an emotionally unavailable, manipulative, punitive mother had on him: it was "[n]o wonder that by 12 or 13 [h]e began drinking alcohol and smoking marijuana." Although the Arizona Supreme Court recognized that Spreitz's "subnormal" upbringing was "a mitigating circumstance," it "accord[ed] it little weight." *Spreitz I*, 945 P.2d at 1280. Had the court properly considered Spreitz's longstanding history of alcohol abuse in conjunction with and as a manifestation of his disturbing childhood, both mitigating circumstances—and most importantly, the two in combination—would have been more compelling.

The dissent argues that Spreitz's long-term history of alcohol abuse cannot be central to his plea for leniency because much of his mitigation evidence focused on his "abusive and dysfunctional childhood, upbringing, and interactions with his mother," Dissent at 66, not his history of alcohol and substance abuse. This argument, however, misses the point, as it overlooks the interlinked relationship between Spreitz's alcoholism and his subnormal childhood: Spreitz's history of alcohol and substance abuse is central to evaluating the actual significance of his childhood as a mitigating factor, and vice versa.

In addition to being a symptom of his dysfunctional childhood, Spreitz's alcohol and substance abuse can be seen as linked to his emotional immaturity, another nonstatutory mitigating circumstance recognized by the Arizona Supreme Court but described as not "significant." *Spreitz I*, 945 P.2d at 1282. In his report, Dr. Flynn explained that Spreitz was "very likely to have been socially and emotionally immature" due, at least in part, to "[y]ears of alcoholism intoxication [that] wipe[d] out many of the . . . healthy developmental processes requisite to age-appropriate social and emotional maturity." Similarly, in his sentencing memorandum, Spreitz connected "[h]is developmental failure" with his "[n]umbing by use of alcohol." Again, had the Arizona Supreme Court properly considered Spreitz's longstanding alcohol and substance abuse, another mitigating factor—Spreitz's emotional immaturity—would have been brought into proper perspective.

Thus, by failing to consider Spreitz's longstanding alcohol and substance abuse, the Arizona Supreme Court was left with a critical void in Spreitz's narrative: Spreitz's subnormal childhood was so emotionally disturbing that it led him to drink by the age of twelve or thirteen, which, in turn, disrupted his normal development and contributed to his emotional immaturity. As both a symptom and cause of other mitigating factors, Spreitz's longstanding alcohol abuse was thus central to his plea for leniency.[16] Without

---

[16] Contrary to the dissent's suggestion, Spreitz did not focus on his intoxication at the time of the crime to the exclusion of his history of alcohol abuse. Dissent at 22–24. Rather, both he and Dr. Flynn distinguished between Spreitz's history of alcohol abuse as nonstatutory mitigation and his intoxication at the time of the crime as statutory mitigation. It is Spreitz's *history* of alcohol abuse that underlies and amplifies much of his other mitigation evidence, not his intoxication at the time of Reid's murder.

consideration of the evidence of his long-term substance and alcohol abuse, the Arizona Supreme Court's conclusions regarding all of Spretiz's mitigation evidence were fundamentally flawed.

We come to this conclusion fully recognizing, as the dissent emphasizes, that "the severity of an aggravating circumstance must be considered when determining whether an *Eddings* error is harmless." Dissent at 71. The Arizona Supreme Court described what Spreitz's "confession and physical evidence" revealed: that "Spreitz beat and raped [Reid] in a brutal assault that lasted many minutes before he crushed her skull." *Spreitz I*, 945 P.2d at 1279. For this reason, the Arizona Supreme Court affirmed the sentencing court's finding that Reid's murder was especially cruel. *Id.* Even so, we found prejudicial nexus-error in *McKinney* where the murder was done in a cruel manner for pecuniary gain as part of a double murder. *McKinney*, 813 F.3d at 823. "When the choice is between life and death," "the risk that the death penalty will be imposed in spite of facts which may call for a less severe penalty. . . . is unacceptable." *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 264 (2007) (quoting *Lockett v. Ohio*, 438 U.S. 586, 605 (1978)). Accordingly, the sentencer "must be able to give meaningful consideration and effect to *all* mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, *notwithstanding the severity of his crime*." *Id.* at 247 (emphasis added).

Here, the Arizona Supreme Court failed to give *any* meaning to Spreitz's longstanding alcohol and substance abuse, an oversight which, in turn, minimized the value of other mitigating evidence as well. Because the court's analysis was missing a core component, we "cannot say, with fair assurance" that the Arizona Supreme Court's

*Eddings* error did not affect its decision.  *McKinney*, 813 F.3d at 822.  As a result, the Arizona Supreme Court's refusal to consider the evidence was not harmless under *Brecht*.

## IV.  Conclusion

We reverse in part the district court's judgment denying a writ of habeas corpus.  We remand with instructions to grant the writ with respect to Spreitz's sentence unless the state, within a reasonable period, either corrects the constitutional error in his death sentence or vacates the sentence and imposes a lesser sentence consistent with the law.

**REVERSED in part and REMANDED.**

---

TALLMAN, Circuit Judge, dissenting:

The court declares that Christopher Spreitz's death sentence should be vacated because, applying de novo review, the sentencing court and the Arizona Supreme Court violated *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and that this error was not harmless.  I respectfully dissent.

First, the record does not establish that either court unconstitutionally refused to consider relevant mitigating evidence.  They were simply not persuaded by it.  What the record clearly shows is the Arizona courts did not find that Spreitz's proffered evidence outweighed the aggravating factor of cruelty in the way by which he brutally murdered Ruby Reid.  Second, even if we determined that the Arizona courts did violate *Eddings*, Spreitz cannot show that this error had a "substantial and injurious effect or influence" on

his ultimate sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Given the savage brutality of his crimes and the weakness of all the mitigation evidence he presented, any remand for a redetermination of the appropriate penalty ought to result in the same decision.

Nonetheless, the majority attempts unsuccessfully to navigate the course that Spreitz's *Eddings* claim requires him to sail to warrant federal habeas relief. In doing so, the majority has once again foundered on the shoals of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), specifically 28 U.S.C. § 2254—where so many of our prior habeas corpus decisions are wrecked—failing to afford the respect due the decisions of our sister state courts and taunting the Supreme Court for another capsizing in lieu of safe passage.

I

We review the Arizona post-conviction relief (PCR) court's decision because it is the last reasoned state court decision on Spreitz's *Eddings* claim. *See Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Under AEDPA we first must decide the level of deference to give to that decision by determining whether it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1).

I do not quarrel with the majority's determination that the PCR court held a mistaken view of what *Eddings* requires, and that we therefore must review Spreitz's *Eddings* claim de novo. *See Castellanos v. Small*, 766 F.3d 1137, 1146 (9th Cir. 2014). However, "we may not grant habeas relief simply because of [the PCR court's] § 2254(d)(1) error . . . ." *Frantz v. Hazey*, 533 F.3d 724, 735

(9th Cir. 2008) (en banc); *see also id.* at 728, 735–37 (explaining our "approach to reviewing state court decisions that rely on legal principles contradicting clearly established Supreme Court law but do not necessarily reach the wrong result").

On de novo review, Spreitz can meet neither of the two requirements to obtain habeas relief on his *Eddings* claim. First, he cannot demonstrate that the state sentencing courts actually violated *Eddings*. And second, even if there was a violation, he cannot show that any *Eddings* error by those state courts was prejudicial under *Brecht*.

II

Spreitz's *Eddings* claim rests in large part on the erroneous assumption that the sentencing court and the Arizona Supreme Court failed to consider his history of alcohol and substance abuse, unrelated to the offense, as non-statutory mitigation when determining his sentence. He contends that, by failing to consider all mitigating circumstances, the state courts violated *Eddings*, which provides that in capital cases "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986) (quoting *Eddings*, 455 U.S. at 114). *Eddings* also provides that the sentencer "may determine the weight to be given relevant mitigating evidence." 455 U.S. at 114–15.

Recently, we adopted an erroneous presumption that the Arizona Supreme Court repeatedly violated the dictates of *Eddings* by "consistently" applying an unconstitutional causal nexus test to all capital cases between 1989 and 2005. *See McKinney v. Ryan*, 813 F.3d 798, 803 (9th Cir. 2015)

(en banc), *cert. denied*, 137 S. Ct. 39 (2016).**[1]**  "We did not say, however, that the Arizona [Supreme Court] always applied it." *See Greenway v. Ryan*, 866 F.3d 1095, 1095 (9th Cir. 2017) (per curiam).  Notably, in listing the cases in which the Arizona courts erroneously applied the causal nexus test, *McKinney* did not include Spreitz's case. *See* 813 F.3d at 815–16, 824–26.  And in *McKinney*, our holding resolved only the "precise question" whether the state court in that specific case had applied the causal nexus test. *Id.* at 804; *see also Hedlund v. Ryan*, 854 F.3d 557, 586 n.22 (9th Cir. 2017) ("We express no opinion as to how to apply *McKinney* in future Arizona capital cases from the suspect time period.").  Each case must be reviewed on its unique facts.  We therefore must examine the state court decisions in Spreitz's case to determine whether they properly took into account all mitigating factors.**[2]**

---

**[1]** The real damage inflicted by the en banc decision in *McKinney* is the broad assumption it adopts that now infects every death sentence imposed by Arizona courts for horrendous murders adjudicated in the sixteen-year period.  It is regrettable that the United States Supreme Court denied certiorari in *McKinney*.  But this case presents yet another opportunity to right the error in Ninth Circuit death penalty habeas jurisprudence.

**[2]** In reviewing the last reasoned state court decision, we may consider "the record that was before the state court that adjudicated the claim on the merits." *Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013) (citation omitted).  The record before the PCR court in this case included the sentencing judge's decision and the Arizona Supreme Court's direct appeal ruling.  Thus, despite the majority's preference for cabining its view of the record to only the Arizona Supreme Court's decision, we must consider both decisions here.

## A

At all relevant times in this case, the operative Arizona death penalty statute required a sentencing court to "impose a sentence of death if the court finds one or more of the aggravating circumstances enumerated in [the statute and determines] that there are no mitigating circumstances sufficiently substantial to call for leniency." Ariz. Rev. Stat. § 13-703(E) (1993) (current version at Ariz. Rev. Stat. § 13-751(E) (2012)).  Arizona law provided five statutory mitigating factors, *see* § 13-703(G), including a modified form of diminished capacity:  "The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired, but not so impaired as to constitute a defense to prosecution." *Id.* § 13-703(G)(1).  Even our en banc court acknowledged, "When applied solely in the context of statutory mitigation under § 13-703(G)(1), the causal nexus test does not violate *Eddings.*" *McKinney*, 813 F.3d at 810.

But Arizona law also provided for consideration of catch-all, non-statutory mitigating evidence that encompassed "any factors proffered by the defendant or the state that are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense." Ariz. Rev. Stat. § 13-703(G). The dictates of *Eddings* apply to such non-statutory mitigating evidence. *See McKinney*, 813 F.3d at 810 ("When applied in the context of nonstatutory mitigation, the causal nexus test clearly violates *Eddings*.").  Lastly, Arizona law requires the Arizona Supreme Court to "independently review the trial court's findings of aggravation and mitigation and the propriety of the death

sentence." Ariz. Rev. Stat. § 13-703.01(A) (1994) (current version at Ariz. Rev. Stat. § 13-755(A) (2009)).

## B

Here, Spreitz cannot show that the sentencing judge, the Honorable William N. Sherrill, violated *Eddings* in determining Spreitz's sentence. At sentencing, Spreitz submitted a memorandum that specifically discussed his history of substance abuse and cited *Eddings*; defense psychologist Dr. Todd C. Flynn provided the court with a psychological evaluation report and testimony specifically discussing Spreitz's history of substance abuse as both statutory and non-statutory mitigating factors; and Judge Sherrill differentiated between the two types of mitigation and ultimately decided that the mitigating evidence did not outweigh the aggravating factor of cruelty based on how Spreitz murdered Ms. Reid.

In his written judgment, Judge Sherrill acknowledged that "many factors have been submitted in mitigation." Among the mitigating evidence, he observed that Spreitz "in his life turned to substance abuse—alcohol and some suggestion he was using cocaine and other drugs"—and that Spreitz's "history of intoxication [was] longstanding." He also found that Spreitz "had been abusing substances for close to ten years of his life." Judge Sherrill's discussion of Spreitz's history of substance abuse unrelated to the crime establishes that he *considered* that evidence in his sentencing decision. *See Williams v. Stewart*, 441 F.3d 1030, 1057 (9th Cir. 2006) (stating that a sentencing court does not violate *Eddings* where it is clear that "the sentencing court considered all relevant mitigating evidence that was offered").

There is an important distinction between Judge Sherrill's *consideration* of Spreitz's evidence of his long-term substance abuse, and Judge Sherrill's subsequent *findings* regarding the weight he ultimately decided to give that evidence.   After discussing Spreitz's proffered mitigating evidence, Judge Sherrill correctly observed that the issue was, in weighing the imposition of capital punishment, "whether any of these mitigating circumstances, individually or cumulatively, can balance or outweigh the aggravating circumstances."   And, he finally determined that "the mitigating circumstances [were] not sufficient to balance the aggravating circumstances, nor [were] they sufficiently substantial to call for leniency."   In reaching that conclusion, Judge Sherrill specified that he did "not believe that intoxication [was] *any sort* of mitigating circumstance."  (Emphasis added.)  One should fairly read that conclusion to mean that Spreitz's long history of substance abuse was neither a statutory nor a non-statutory mitigating factor "sufficiently substantial to call for leniency."  Ariz. Rev. Stat. § 13-703(E).

Under *Eddings*, Judge Sherrill was free to conclude that Spreitz's mitigating evidence, whether statutory or non-statutory, simply did not warrant leniency given the aggravating circumstance of how Spreitz cruelly murdered Ruby Reid.  *See Mann v. Ryan*, 828 F.3d 1143, 1159–60 (9th Cir. 2016) (holding that defendant "failed to show that the mitigating circumstances he had presented," including a history of substance abuse, "outweighed the aggravating circumstances of his crimes"), *cert. denied*, 137 S. Ct. 1091 (2017), 137 S. Ct. 1205 (2017); *Henry v. Ryan*, 720 F.3d 1073, 1090 n.11 (9th Cir. 2013) (recognizing that "historical alcoholism might [be] considered aggravating as well as mitigating, depending on the perspective of the sentencing court").  "It is sufficient that a sentencing court state that it

found no mitigating circumstances that outweigh the aggravating circumstances." *Williams*, 441 F.3d at 1057 (quotation omitted).

*Eddings* also did not prevent Judge Sherrill from giving less weight to Spreitz's substance abuse history based on a lack of nexus to the murder. *See Hedlund*, 854 F.3d at 587 n.23 (stating that under *Eddings*, "a court is free to assign less weight to mitigating factors that did not influence a defendant's conduct at the time of the crime"); *Styers v. Ryan*, 811 F.3d 292, 298–99 (9th Cir. 2015) (holding that the Arizona Supreme Court did not violate *Eddings* in assigning little weight to the petitioner's PTSD in the absence of a causal connection to the crime), *cert. denied*, 137 S. Ct. 1332 (2017). Nor did *Eddings* prevent Judge Sherrill from assigning *no* weight to Spreitz's long-term substance abuse unrelated to the offense, so long as Judge Sherrill *considered* that evidence, which the record shows he definitely did. *See Williams*, 441 F.3d at 1057 ("Once mitigating evidence is allowed in, a finding that there are 'no mitigating circumstances' does not violate the Constitution."); *Ortiz v. Stewart*, 149 F.3d 923, 943 (9th Cir. 1998) ("[T]he sentencing court did not refuse to consider mitigating evidence; it considered the evidence and found it inadequate to justify leniency. That assessment did not violate the Constitution."), *overruled in part on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012).

In addition to the above findings, Judge Sherrill also added that he did not "believe that [Spreitz's] substance abuse or intoxication impaired [his] ability and capacity to appreciate the wrongfulness of his conduct to any significant degree" under § 13-703(G)(1). At the time, Arizona courts were *required by law* to examine whether evidence of alcohol and drug use bore a causal connection to the crime.

Ariz. Rev. Stat. § 13-703(G)(1) (requiring the sentencer to consider leniency if the defendant proved that his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution"). And, there is no question that Spreitz pursued a mitigation strategy at sentencing that attempted to link his long-term substance abuse with the kidnap/murder to show statutory mitigation under § 13-703(G)(1).

For example, Spreitz's sentencing memorandum stated that Dr. Flynn's insights about him were of "the nature, type and character contemplated by A.R.S. Section 13-703(G)(1)," and that "Dr. Flynn's report [was], indeed, relevant and should be considered by the Court as statutory mitigating circumstances." Dr. Flynn's report and expert testimony went to great lengths to argue that Spreitz's alcohol abuse was "very strongly correlated with violent behavior . . . ." Judge Sherrill could not respond to Spreitz's argument that § 13-703(G)(1) called for leniency without analyzing whether Spreitz had shown a connection between his substance abuse and the murder. We cannot infer from that causal nexus analysis that Judge Sherrill flatly refused to consider any evidence of substance abuse that was not causally related to the crime.

Rather, this record shows that Judge Sherrill constitutionally applied a causal nexus test in the context of an Arizona statutory mitigating factor, § 13-703(G)(1). *See McKinney*, 813 F.3d at 810 ("When applied solely in the context of statutory mitigation . . . , the causal nexus test does not violate *Eddings*."). Judge Sherrill's other statements repeatedly demonstrate that he understood *Eddings*' mandate and considered all of Spreitz's proffered mitigating evidence, but ultimately found that evidence

insufficient to warrant leniency. We are in the same situation here that recently confronted our Court in *Hedlund*. *See* 854 F.3d at 591 (Bea, J., concurring) ("[Although] Judge Sheldon constitutionally applied a causal-nexus test in the context of an Arizona statutory mitigating factor[, § 13-703(G)(1), that] statement does not show that Judge Sheldon excluded mitigating evidence from his consideration, and Judge Sheldon's other statements repeatedly demonstrate otherwise.").

Nor does the record before us support the conclusion that Judge Sherrill failed to consider evidence of Spreitz's long-term substance abuse as a non-statutory mitigating factor. What we can say for sure is that he was not persuaded by that evidence. Judge Sherrill listened to testimony and arguments at trial and in the penalty phase, read everything submitted, and then deliberated for three days before concluding that Spreitz's mitigation evidence was not sufficient to outweigh the evidence in aggravation warranting death. There is no *Eddings* error here.

## C

Similarly, in its "detailed independent review" of Spreitz's sentence, the Arizona Supreme Court "examined the entire record to weigh and consider the aggravating and mitigating circumstances." *State v. Spreitz*, 945 P.2d 1260, 1278 (Ariz. 1997). Consistent with *Eddings*, the Arizona Supreme Court recognized "that the sentencing judge must consider any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether the death penalty should be imposed." *Id.* at 1279 (quotation omitted). And, it recognized "that the weight accorded such evidence is within the sentencing judge's discretion." *Id.*; *see Greenway*, 866 F.3d at 1097 (citing similar language in the Arizona Supreme Court's review of

a capital sentence to conclude that the court "did not reject any mitigating factor, as a matter of law, on the theory that it was not related to the commission of the crime").

In that review, the Arizona Supreme Court specifically observed that the "record demonstrates defendant's longtime substance abuse problems." *Spreitz*, 945 P.2d at 1280. Nonetheless, the court found that Spreitz's "general problems with substance abuse [were] not essential to [its] decision" because, ultimately, "the aggravating circumstance of especial cruelty in [Spreitz]'s murder of Ruby Reid outweigh[ed] all factors mitigating in favor of leniency." *Id.* at 1280, 1282. The Arizona Supreme Court thus rejected, on the merits, Spreitz's argument that his long-term substance abuse constituted either a statutory or non-statutory mitigating factor warranting leniency in his case. There is no mitigation evidence it refused to consider.

To the extent that the majority cites *Poyson v. Ryan*, 879 F.3d 875 (9th Cir. 2018), for the proposition that *McKinney*, 813 F.3d at 802–03, adopts a *per se* rule that the Arizona Supreme Court applied an unconstitutional causal nexus test in all capital cases over a 15-year period, I fully agree with Judge Ikuta's reluctant concurrence in *Poyson*. 879 F.3d at 897–900. *McKinney* was wrongly decided and flips the "presumption that state courts know and follow the law." *Id*. at 897–98 (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). The record here rebukes even the *McKinney* presumption and in that respect is factually distinguishable from both *McKinney* and *Poyson*.

The majority nonetheless concludes that the Arizona Supreme Court's use of the term "not essential" proves that the court "require[d] that Spreitz establish a causal connection between his longstanding substance abuse and the murder before considering and weighing the evidence as

a nonstatutory mitigating factor." Op. at 22–23, 29. Not so. We can reasonably interpret "not essential" to mean inconsequential, which we have previously defined in a similar context as having little effect on the outcome. *See Landrigan v. Stewart*, 272 F.3d 1221, 1230 (9th Cir. 2001) ("At any rate, any error in failing to consider Landrigan's use of alcohol and drugs would have been inconsequential; it would have had no effect whatsoever on the outcome."), *adopted sub nom. Landrigan v. Schriro*, 501 F.3d 1147 (9th Cir. 2007) (en banc).

The majority reasons that, unlike the Arizona Supreme Court's consideration of Spreitz's substance abuse history unrelated to the murder, "when the court considered other mitigating factors, it specifically discussed the *weight* it would give to those factors . . . ." Op. at 31. But the law has never imposed an obligation on the sentencer to explicitly disclose the value it assigns to every piece of mitigating evidence. "The U.S. Supreme Court has 'never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.'" *Styers*, 811 F.3d at 298 (quoting *Kansas v. Marsh*, 548 U.S. 163, 175 (2006)). Nor did *McKinney* abrogate the principle that a sentencing court is not required to "itemize and discuss every piece of evidence offered in mitigation." *Jeffers v. Lewis*, 38 F.3d 411, 418 (9th Cir. 1994) (en banc). "We have determined that a sentencing court need not specifically discuss each individual item of mitigating evidence so long as it appears to have considered all relevant evidence." *Ortiz*, 149 F.3d at 943. This is particularly important when reviewing *Eddings* claims because otherwise we could infer that a sentencing court refused to consider any piece of evidence to which it did not expressly assign a value, even though it sufficiently discussed that proffered evidence. That is not the law.

For example, in *Jeffers*, our en banc court held that the state court's "failure to list and discuss each item of evidence [that the defendant] offered in mitigation" did not demonstrate that the "court neglected to consider all of his mitigation evidence." 38 F.3d at 417–18. Instead, we held that there was no clear requirement under either Arizona law or the federal Constitution that the sentencer itemize and discuss each piece of evidence offered in mitigation. *Id.* at 418. And, we held that the sentencing court there clearly considered all such evidence. *Id.* In addition, a sentencing court "need not exhaustively analyze each mitigating factor as long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the defendant." *Moormann v. Schriro*, 426 F.3d 1044, 1055 (9th Cir. 2005) (quotation omitted); *see also Lopez v. Schriro*, 491 F.3d 1029, 1039 (9th Cir. 2007) (observing that there is no "clearly established Supreme Court precedent setting forth the record the sentencing court must make in order to permit sufficient appellate review" (quotation omitted)). We can easily make that determination here.

The majority also focuses on the Arizona Supreme Court's *additional* finding that Spreitz "was [not] impaired by alcohol consumption to an extent that it interfered with his 'capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.'" Op. at 28 (quoting *Spreitz*, 945 P.2d at 1280–81). But this statement does not mean that the Arizona Supreme Court refused to *consider* Spreitz's long-term substance abuse unrelated to the murder. On the contrary, as the majority recognizes, the Arizona Supreme Court's "decision . . . suggest[ed] the court knew, understood, and applied the law with respect to *Eddings*." *Id.* at 32. For example, the Arizona Supreme Court stated: "In our review, we have

been mindful that the sentencing judge *must* consider any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether the death penalty should be imposed." *Spreitz*, 945 P.2d at 1279 (quotations omitted) (emphasis added). After independently "weighing the mitigating circumstances both individually and cumulatively against the aggravating circumstance," it ultimately found that "the aggravator of especial cruelty outweighed all other circumstances." *Id.* at 1280. Those findings do not violate *Eddings*. They reflect a careful consideration of all of the evidence, ultimately concluding that the death sentence was warranted here despite what Spreitz offered in mitigation. Thus, there was no *Eddings* violation.

## III

Even if we were to determine that the state courts committed *Eddings* error by failing to consider Spreitz's long-term substance abuse unrelated to the offense, Spreitz cannot show that this error was prejudicial because the violent manner in which he abducted and murdered Ruby Reid trenchantly outweighed all evidence proffered in mitigation. *See Greenway*, 866 F.3d at 1100 (denying habeas relief on petitioner's *Eddings* claim because the Arizona Supreme Court's *Eddings* error was harmless). Thus, even assuming that the state courts unconstitutionally excluded that evidence, their factual determinations make clear that the evidence would have been entitled to little mitigating weight in their ultimate sentencing determinations.

"The harmless-error standard on habeas review provides that 'relief must be granted' only if the error 'had substantial and injurious effect or influence in determining the [sentence imposed].'" *McKinney*, 813 F.3d at 822 (quoting *Brecht*,

507 U.S. at 623).  The United States Supreme Court has distinguished this harmless error standard from the standard applicable to cases on direct review, which require merely a "reasonable possibility" that the error affected the outcome of the proceedings.  *See Brecht*, 507 U.S. at 634–38 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).  Unlike cases on direct review, "granting habeas relief merely because there is a 'reasonable possibility' that [the] error contributed to the [outcome of the proceedings] is at odds with the historic meaning of habeas corpus."  *Id.* at 637 (citation and quotations omitted).  As such, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  *Id.* at 634 (citation and quotations omitted).

In *McKinney*, we clarified that a state court's *Eddings* violation is harmless if we can "say[] with fair assurance" that "the judgment was not *substantially* swayed by the error."  813 F.3d at 822 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)) (emphasis added).  On the other hand, an *Eddings* error is not harmless if we are in "grave doubt" about whether it had a substantial and injurious effect or influence in determining the sentence imposed.  *Id.* (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).  *McKinney* held that the excluded evidence there "was important mitigating evidence" because it was "*central* to [McKinney's] plea for leniency."  813 F.3d at 823 (emphasis added).  It cited *Coleman v. Calderon*, 210 F.3d 1047 (9th Cir. 2000), where we held that an unconstitutional jury instruction at sentencing was not harmless because "it undermined the very *core* of Coleman's plea for life."  *Id.* at 1051 (emphasis added).

Here, based on what the Arizona courts repeatedly said, there is no "grave doubt" as to whether any *Eddings* error

substantially influenced or swayed Spreitz's ultimate
sentence. The courts at every level consistently found that
"the aggravating circumstance of especial cruelty in
[Spreitz's] murder of Ruby Reid outweigh[ed] all factors
mitigating in favor of leniency." *Spreitz*, 945 P.2d at 1282.
In considering the entire record, the Arizona Supreme Court
explained:

> We agree with the sentencing judge that
> defendant's upbringing was subnormal. The
> record supports the judge's conclusion that
> defendant's home life was sadly lacking and
> that his mother's erratic behavior toward
> defendant inhibited his emotional
> development and social skills . . . . Although
> we recognize defendant's upbringing as a
> mitigating circumstance, we accord it little
> weight. While defendant's inadequate
> upbringing may have contributed to his
> emotional immaturity and undeveloped
> humanitarian skills, we concur with
> defendant's statement at his sentencing
> hearing that "people that have had as bad a
> background or worse haven't killed. And I
> don't want what everyone has said about my
> background to be an excuse for what's
> happened."

> . . . .

> The record demonstrates defendant's
> longtime substance abuse problems. We
> note, however, that defendant's general
> problems with substance abuse are not
> essential to our decision here. We therefore

decline to conclude that defendant was impaired by alcohol consumption to an extent that it interfered with his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." A.R.S. § 13-703(G)(1) . . . .

[W]e find that defendant expressed remorse for the victim's death on more than one occasion . . . . We recognize remorse as a nonstatutory mitigating factor . . . . However, defendant's remorse for his actions does little to counterbalance especial cruelty as a serious aggravating circumstance in Ms. Reid's murder. According to defendant's confession, when he left Ms. Reid in the desert early the morning of May 19, 1989, he did not know whether she was alive or dead. He confessed that he rode his bicycle out to the murder site several days later to see if her body was still there, hoping that it would not be, that she was still alive. We would find defendant's remorse a more compelling mitigating factor if, for example, it had prompted him to report his actions toward Ms. Reid to the authorities.

The sentencing judge found that defendant's ability to appreciate the wrongfulness of his conduct was not impaired on the night of the murder to any significant extent by substance abuse, emotional disorders, situational stress, or by a combination of these. Our review of the record convinces us that the trial court's finding was proper . . . .

> We agree that the record supports the sentencing judge's findings that defendant had no previous adult felony convictions, no prior record of acts of violence, and that defendant is capable of rehabilitation. We also find that the sentencing judge correctly rejected defendant's age of twenty-two as a mitigating circumstance and properly found that his emotional immaturity was not a significant mitigating factor.
>
> After examining the entire record and reweighing the applicable aggravating and mitigating factors, we find that the aggravating circumstance of especial cruelty in defendant's murder of Ruby Reid outweighs all factors mitigating in favor of leniency.
>
> . . . .
>
> We have conducted an independent review of defendant's aggravating and mitigating circumstances as required by A.R.S. section 13-703.01 and find that the mitigating circumstances cumulatively are not sufficiently substantial to warrant leniency in relation to the aggravating circumstance of cruelty.

*Id.* at 1280–83.

Despite this explanatory language summarizing its analysis of all of the evidence from the sentencing hearing, the majority nonetheless insists that the Arizona Supreme Court refused to consider Spreitz's long-term substance abuse as a non-statutory mitigating factor, and concludes this refusal "had a substantial and injurious effect on [Spreitz's sentence]." Op. at 35–36. My colleagues reason that "Spreitz's long-term alcohol and substance abuse was important mitigation evidence . . . central to his plea for leniency." *Id.* The record belies that characterization.

A

Unlike *McKinney* and *Coleman*, Spreitz's history of substance abuse unrelated to the murder was not "central" to his plea for leniency or at the very core of his plea for life. Instead, Spreitz argued at sentencing that he deserved leniency because of, among other things, (1) his intoxication, age, and emotional immaturity *at the time of the crime*; (2) his disruptive childhood; (3) his abusive home environment; (4) his emotionally cold mother; (5) his poor social adjustment; (6) a persistent pattern of rejection; (7) the absence of a healthy role model; (8) a lack of economic and emotional support; (9) his lack of a high school education; (10) the absence of adult convictions and violent behavior; (11) his low risk of future danger; (12) his good character; (13) his good behavior while in jail; and (14) his rehabilitative nature. *See, e.g.*, *Spreitz*, 945 P.2d at 1279 ("At sentencing, defendant argued as statutory and nonstatutory mitigating factors: (1) his dysfunctional family life and lack of socialization; (2) a history of alcohol and drug abuse; (3) his expressions of remorse; (4) his impaired capacity to appreciate the wrongfulness of his conduct, A.R.S. § 13-703(G)(1); (5) his good behavior while incarcerated; (6) his lack of adult convictions; (7) no prior

record of violent tendencies; and (8) his age at the time of the murder, A.R.S. § 13-703(G)(5).").    Specifically, Spreitz's sentencing memorandum posited that:

>The Defendant's background and upbringing are ripe with numerous mitigating factors:
>
>1. He faced a disruptive middle childhood.
>
>2. Punitive and abusive behavior toward [Spreitz].
>
>3. An emotionally cold mother.
>
>4. Poor social adjustment with peers.
>
>5. No healthy role model.
>
>6. Drug and alcohol abuse.
>
>7. [That] Spreitz was forced to live on his own without economic or emotional support.
>
>8. Persistent pattern of rejection.

In addition, Spreitz devoted a large portion of his sentencing memorandum to explaining how his childhood abuse, dysfunctional upbringing, developmental immaturity, and emotional problems contributed to his commission of the murder:

For Chris, as with other chronically rejected, neglected and devalued children, there was no escaping [his] deep seated anger and resentment. The desperate, quiet, battle wrestling inside of Chris as he sought to please [his mother] and was rejected could not be numbed forever by alcohol. His developmental failure included the non-development of personal insight and conflict resolution skills. He could not control, understand or deal with the anger. Numbing by use of alcohol and trysts with older women were but stop-gap measures. His fragile facade was ready to crack. Each failure brought Chris closer to the edge. He crossed that point with the victim. The result was inevitable [as] Chris had no way to compensate for a lifetime of misdirected development, through a dysfunctional life and family, especially when combined with arrested and distorted development and alcoholism . . . .

Chris's background is a relevant and powerful mitigating factor with a *determinative factor* culminating in the instant offense. When a person's background has an impact [on] his behavior beyond his control, as here, such a circumstance is clearly mitigation entitled to great [deference]. Add to that the family and abusive environment and *[this] mitigation clearly outweighs any possible claim of aggravation* . . . . The situational stress build up, including rejection by his mother, his

girlfriend, and again that night, coupled with
poorly developed coping skills and alcohol
certainly mitigates the act.

(Emphasis added.)[3]

But the majority nonetheless wishes to recast the defense
theories and reweigh the facts, as if we were conducting a
direct review. The majority singles out Dr. Flynn's
observations that (1) Spreitz began drinking alcohol and
smoking marijuana at age twelve or thirteen, (2) Spreitz
drank steadily by age fifteen, (3) Spreitz's "alcohol abuse
continued to intensify after he left home," (4) Spreitz's
alcoholism reached the level of physical dependence, and
(5) a "variety of persons" described Spreitz as a heavy
drinker, as intoxicated most of the time, and as having
blackouts while drinking alcohol. Those observations,
however, do not make Spreitz's evidence of his longstanding
alcoholism, with no connection to the crime, central to his
plea for leniency.

Instead, Spreitz presented his long-term substance abuse
primarily to establish the *statutory* mitigating factors under
§ 13-703(G)(1) and § 13-703(G)(5). As to § 13-703(G)(1),
Dr. Flynn repeatedly emphasized that Spreitz's lifetime of
substance abuse *contributed* to his murder of Ms. Reid.
Notably, Dr. Flynn's report opined that:

The research on violent behavior shows a
strong correlation with alcohol intoxication.

---

[3] Likewise, Spreitz claims in this appeal that his lawyer was
ineffective at sentencing by failing to present witnesses who had
extensive evidence about his early development, family history, head
injuries, substance abuse, and emotional problems. We have rejected
that claim in a contemporaneously filed memorandum disposition.

Given [Spreitz's] history, I can see a perceived rejection by two women in the same evening as especially disturbing to him, particularly when intoxicated, to the point at which he lost aggressive control, disinhibited by the alcohol intoxication . . . .

My best guess is that he was drunk, hurt and angry at the unwillingness of his girlfriend to let him into her apartment, startled into an alcoholic rage at the angry confrontation by the victim, and ended up venting the years of stored up rage at her.

And although several factors that normally predict violence were not present, there is *alcoholism*—one of the strongest correlates of violent behavior. And, there is the emotional, sexual maladjustment that comes from his lifetime of misdirected development in a dysfunctional family, combined with arrested and/or distorted adult development *because of the alcoholism* . . . .

1. Given the *history of alcoholism* . . . a significant but unknown degree of alcohol intoxication is likely. Alcohol intoxication has a well-documented disinhibiting effect which frequently includes losses of control of angry emotions and aggressive behavior.

2. [Spreitz's] history strongly suggests years of early experiences likely to have caused a build-up of pent-up angry, aggressive feelings toward women generally (and older

women especially) which may have burst
forth with uncontrollable intensity with or
without alcohol intoxication. Only trivial
provocation is required for this type of
aggression explosion, termed an Intermittent
Explosive Disorder by DSM-IV.

3. Still more likely is that a combination of
1. and 2. above contributed to an
uncontrollable outburst of aggression.

(Emphasis added.)

Dr. Flynn also gave extensive testimony on how
Spreitz's substance abuse contributed to the impairment of
his mental state "in terms of conforming his behavior to his
understanding of the law and right and wrong generally." At
the aggravation-mitigation hearing, Dr. Flynn went to great
lengths to opine that Spreitz's alcohol abuse was "very
strongly correlated with violent behavior." Dr. Flynn also
testified that Spreitz's parents' failure to treat his alcoholism
during his teenage years was significant because it *increased
his violence potential*: "[A]lcohol is probably the most
common, strongest correlative . . . with violent behavior
. . . , doubling the risk of violent behavior and I think the
absence of successful treatment for alcoholism is likely to
have been a *significant* and maybe a *sine qua non* that went
on in this offense." (Emphasis added.)

In light of the evidence presented by Dr. Flynn, it is hard
to say that the Arizona courts did not consider the effect of
*both* his intoxication and his history of substance abuse as
required under § 13-703(G)(1). They just weren't persuaded
by it. Rather, they reasonably and properly found that
Spreitz's history of alcohol abuse was not sufficiently

influential on his ability to conform his conduct to the law or his ability to appreciate the consequences at the time he viciously murdered Ms. Reid. Contrary to the majority's suggestion, Op. at 28–29, it cannot be said that the Arizona courts never considered his longstanding alcoholism under § 13-703(G)(1) in the first place.

As to the statutory mitigating factor under § 13-703(G)(5), Dr. Flynn explained how Spreitz's history of substance abuse contributed to his emotional immaturity: "When you spend most of your teenage years drunk or stoned, it has not only been my observation in criminal populations but my observations clinically . . . that virtually all heavily drugged teenagers [are] socially and emotionally *immature* as having substance abuse problems." (Emphasis added.) Dr. Flynn also testified that the lack of a treatment effort in Spreitz's home to deal with his alcoholism was significant because it showed a lack of proper supervision and parenting during his developing years, which *contributed* to his emotional immaturity under § 13-703(G)(5):

> [The lack of any treatment effort for Spreitz's alcoholism] is consistent with an uncaring parent to have a child which is stealing booze out of the house from the early teenage years, who shows up drunk in his early teenage life and everybody in the person's life recognizes there's a serious alcoholic problem and yet the parent either does one of two things, doesn't care enough to notice or doesn't care enough to do anything about it. That's important in and of itself in my opinion from the standpoint of an evaluation of parenting.

Thus, where Spreitz did not present his long-term substance abuse to explain his conduct at the time of the murder under § 13-703(G)(1), he did so to plead for leniency based on his emotional immaturity under § 13-703(G)(5). Any evidence that Spreitz presented of his long-term substance abuse as *non-statutory* mitigation was cursory and only ancillary to the considerable evidence he adduced to explain how his past addiction affected his conduct and immaturity at the time of the murder.

Moreover, the significant evidence presented regarding Spreitz's abusive and dysfunctional childhood, upbringing, and interactions with his mother stands as further support that Spreitz's history of alcohol and substance abuse was not central to his plea for leniency. Dr. Flynn testified to those matters at length:

> [Spreitz grew up in] a fully pathological home environment, [which] include[d] physical and emotional neglect, physical abuse and emotional neglect and possibly emotional abuse by the mother according to which there was no hint of acceptance of him in spite of ongoing efforts on his part to please her. In fact of all the people that I interviewed and all the interviews that I read, the only favorable, the only person who had a single favorable thing to say about the mother was Mr. Spreitz himself. From all other persons they described her in the most negative terms. His sister described herself as being saved from the pathological effects of the home by the fact she ran away and was placed in a group home. Mr. and Mrs. Spreitz described most of the mother's behavior in a

manner that would be considered pathogenic by anyone who knew anything about psychology and parenting . . . .

[There is] massive evidence from a psychological point . . . that there was a cold uncaring mother who was anything but sensitive to his needs, whom he was never able to please. By this hypothesis it is most common for children so treated to harbor a store of anger, and it is consistent with this train of thought that the anger was breaking down partially by chronicity and partially by series of emotionally unsuccessful relationships with women, a tendency to orient toward older women in the months leading up to the offense[.] [S]hortly before the offense . . . there had been a rejection by a current girlfriend . . . . [T]his by itself and probably especially this under the disinhibiting influence of alcohol *possibly result[ed] in an explosion of aggressive behavior especially toward a woman and especially toward an older woman*. The recently pent-up rage accumulated over the year aggravated the more recent months which may *be considered by the Court to constitute an outburst of behavior that means an inability to conform one's behavior [to the requirements of the law]*.

(Emphasis added.)

And, when Judge Sherrill asked Dr. Flynn what he considered were *non-statutory* mitigating factors in this

case, Dr. Flynn responded:   "[T]he likely relationship
between the alcoholism and the violence generally and this
offense specifically and . . . the deprived pathogenic home
environment [are what] I would consider non-statutory
factors." (Emphasis added.)  In the face of this record, I am
at a loss to understand how my colleagues can say that
Spreitz's history of substance abuse as a non-statutory
mitigating factor was *central* to or at the very *core* of
Spreitz's plea for leniency.[4]

## B

Two other cases where we have found Arizona courts'
*Eddings* errors to be harmless, *Henry v. Ryan*, 720 F.3d 1073
(9th Cir. 2013), and *Stokley v. Ryan*, 705 F.3d 401 (9th Cir.
2012), are instructive here.

## 1

In *Henry*, the Arizona courts found a statutory mitigating
factor under  § 13-703(G)(1)—namely,  that  "Henry's
capacity to appreciate the wrongfulness of his conduct or to
conform his conduct to the requirements of law was
significantly impaired . . . because of his consumption of
alcohol on the day of the murder."  720 F.3d at 1089–90.
Nonetheless, the courts imposed the death penalty because
they "agreed that the mitigation was not sufficiently

---

[4] The majority does not take issue with the fact that the Arizona
courts considered Spreitz's substance abuse history in the statutory
mitigating context or that they found it insufficient to outweigh the
aggravating factor of cruelty.  "When applied solely in the context of
statutory mitigation," the "causal nexus test does not violate *Eddings*."
*McKinney*, 813 F.3d at 810.

substantial to call for leniency" in light of two aggravating factors. *Id.* at 1090.

As with Spreitz here, on habeas review, we assumed that the state courts violated *Eddings* by failing to consider Henry's history of alcohol abuse as a *non-statutory* mitigating factor. However, we denied habeas relief because Henry failed to show that the *Eddings* error had a "substantial and injurious effect or influence" on his sentence. *Id.* at 1087–89 (quoting *Brecht*, 507 U.S. at 623). We reasoned that, "in imposing the death penalty, the Arizona courts already considered Henry's intoxication at the time of the murder as a mitigating factor" and concluded that it was "not sufficient to call for leniency." *Id.* at 1090. And:

> Given the similar nature of the mitigation, the additional evidence of Henry's historical alcoholism would have had minimal mitigating value. If the state courts concluded that intoxication *with* a causal connection to the crime was not sufficient to call for leniency, it is highly doubtful that they would have considered alcoholism without a causal connection to be sufficient.

*Id.*[5]

Similarly, here, the Arizona courts agreed that Spreitz's substance abuse at the time of the offense was not sufficient to call for leniency. In addition, they found that Spreitz could not show statutory mitigation under § 13-703(G)(1)

---

[5] Although *Henry* involved different facts, as the majority points out, its reasoning applies fully to Spreitz's case. Op. at 36, n.15.

because his "ability to appreciate the wrongfulness of his conduct was not impaired on the night of the murder to any significant extent by substance abuse." *Spreitz*, 945 P.2d at 1281. The majority does not take issue with these findings. As in *Henry*, the Arizona courts' consideration of Spreitz's long-term substance abuse unrelated to the offense would have had minimal mitigating value because of its similarity to the evidence already rejected. *Henry*, 720 F.3d at 1090; *see also Landrigan*, 272 F.3d at 1230 & n.9 (holding that, where the sentencing court rejected the petitioner's "alleged intoxication and past history of drug use as a statutory mitigating factor" and "did not go on to consider them as a nonstatutory mitigating factor," any "error in failing to consider Landrigan's use of alcohol and drugs would have been inconsequential; it would have had no effect whatsoever on the outcome"); *Wong v. Belmontes*, 558 U.S. 15, 23 (2009) ("The sentencing jury was thus 'well acquainted' with Belmontes' background and potential humanizing features. Additional evidence on these points would have offered an insignificant benefit, if any at all." (citation omitted)).

The majority thus errs by failing to apply *Henry*'s reasoning to conclude that any *Eddings* error was harmless here. *See Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001) ("[I]f a controlling precedent is determined to be on point, it must be followed."). If direct evidence of substance-induced intoxication on the night of the murder was insufficient to outweigh the aggravated circumstances of the crime, a long history of drug and alcohol abuse would fare no better.

2

In *Stokley*, we assumed that the Arizona Supreme Court committed *Eddings* error by failing to consider Stokley's

abusive childhood and good behavior in jail because of a lack of causal nexus. 705 F.3d at 403–04. We held, however, that this error was harmless because there were three aggravating circumstances, including that Stokley—like Spreitz—had "committed the offense in an especially heinous, cruel, and depraved manner." *Id.* at 404. We noted the gruesome details of Stokley's offense, including (1) that he had sexual intercourse with his victims; (2) that the victims' bodies (two young girls) were violently beaten; and (3) that the victims' bodies were dragged to and thrown down a mineshaft. *Id.* at 405 n.1. We also observed that both the sentencing court and the Arizona Supreme Court consistently determined that "leniency was inappropriate." *Id.* at 405. We found no likelihood "that, but for a failure to fully consider Stokley's family history or his good behavior in jail during pre-trial incarceration, the Arizona courts would have come to a different conclusion" as to Stokley's sentence. *Id.*

Although *Stokley*'s facts were relatively more egregious than the facts here—*Stokley* involved three aggravating circumstances instead of one and Stokley's victims were under the age of fifteen—*Stokley* nonetheless informs us that the severity of an aggravating circumstance must be considered when determining whether an *Eddings* error is harmless. Here, both the sentencing court and the Arizona Supreme Court consistently ruled that leniency was inappropriate because of the especially cruel manner in which Spreitz kidnapped and murdered Ruby Reid. *Spreitz*, 945 P.2d at 1266, 1278–79 (citing Ariz. Rev. Stat. § 13-703(F)(6)). The crime scene photographs alone give compelling support to that ruling, showing Ms. Reid's body beaten beyond recognition by heavy rocks. The pathologist underscored the extensive damage to her body revealed on autopsy.

Arizona courts consider five factors in "determining whether a murder was especially heinous, cruel or depraved: (1) relishing the murder, (2) infliction of gratuitous violence, (3) needless mutilation of the victim, (4) senselessness of the crime, and (5) helplessness of the victim." *Gulbrandson v. Ryan*, 738 F.3d 976, 984 (9th Cir. 2013) (citing *State v. Gretzler*, 659 P.2d 1, 11–12 (Ariz. 1983) (en banc)). "A finding of cruelty is warranted when the defendant inflicts on the victim mental anguish or physical abuse before the victim's death." *Spreitz*, 945 P.2d at 1278. "Cruelty is found when the victim is conscious at the time of the offense in order to suffer pain and distress." *Id.* (citation and alterations omitted).

Here, the Arizona courts found that Ms. Reid suffered tremendous mental and physical pain when she was forced into Spreitz's car trunk and transported to the desert where she was beaten, sexually assaulted, and eventually murdered. *Id.* at 1265, 1278. Judge Sherrill observed: "At the scene of the murder the victim was thoroughly beaten. The autopsy showed, in addition to the death-causing blows to the head, five ribs broken, eighteen bruises and grab marks, internal bruising and bleeding, lacerations[,] and a broken jaw." Spreitz did not confess to kidnapping Ms. Reid, but did admit to beating her as she fought back, removing her clothes, having intercourse with her, and smashing her in the head with a rock when she would not stop yelling. *Id.* Physical evidence found at the scene of the murder corroborated Spreitz's confession: Ms. Reid's clothing, including her torn brassiere, was strewn in one area of the scene, and photographs of the area vividly depicted drag marks running from that area to the spot where Ms. Reid's body and the bloody rocks were found. According to Spreitz's confession, when he left Ms. Reid lying in the desert on the morning of May 19, 1989, he did not know

whether she was still alive or dead.  Also significant to Judge Sherrill's finding of mental anguish was that Ms. Reid had defecated in and on her clothing.  *See id.* at 1265, 1278–79.

In its independent review of these facts, the Arizona Supreme Court agreed that Spreitz had murdered Ms. Reid in an especially cruel manner.  *Id.* at 1278.  The Arizona Supreme Court highlighted Spreitz's "own admission that he beat her *as she fought back* and hit her with the rock *when she would not stop yelling*," which it found was "clear evidence of [Ms. Reid's] conscious suffering."  *Id.* at 1279. The court found that Spreitz's confession and the physical evidence all pointed to the conclusion that Spreitz "beat and raped [Ms. Reid] in a brutal assault that lasted many minutes before he crushed her skull."  *Id.*  My colleagues in the majority do not quarrel with that finding.

Thus, even assuming that the Arizona courts failed to consider Spreitz's evidence of long-term substance abuse unrelated to the crime, it is unlikely their consideration of that evidence would have substantially altered their ultimate decision to sentence Spreitz to death based on the aggravated manner in which Ms. Reid met her death.  And we cannot say "with fair assurance" that the sentence they imposed was substantially swayed by their failure to consider that evidence.  *McKinney*, 813 F.3d at 822 (quoting *Kotteakos*, 328 U.S. at 765).

Further, *Eddings* allows the Arizona courts "to consider the absence of a causal connection when assessing the quality and strength of [mitigating] evidence."  *Henry*, 720 F.3d at 1090.  It does not prevent the Arizona courts from "assign[ing] less weight to mitigating factors that did not influence a defendant's conduct at the time of the crime." *Hedlund*, 854 F.3d at 587 n.23.  The Arizona Supreme Court has recognized this principle in its more recent cases.  *See,*

*e.g.*, *State v. Newell*, 132 P.3d 833, 849 (Ariz. 2006) (en banc) ("We do not require that a nexus between the mitigating factors and the crime be established before we consider the mitigation evidence. But the failure to establish such a causal connection may be considered in assessing the quality and strength of the mitigation evidence." (citation omitted)). Thus, we can confidently say that if Spreitz were resentenced, the Arizona courts would give even less weight to his history of substance abuse unrelated to the crimes in balancing that evidence against what he did to Ruby Reid.

## C

The majority cites *Henry* for the broad proposition that "a 'history of substance abuse [is] substantially mitigating when . . . combined with other mitigating evidence.'" Op. at 36 (emphasis omitted) (quoting *Henry*, 720 F.3d at 1090). But the majority has not offered up any authority that reaches this conclusion under factually-similar circumstances. Indeed, unlike the three cases *Henry* relies upon in making this statement, Spreitz's defense counsel presented considerable evidence at sentencing of his lifelong history of substance abuse, his mental and emotional problems, and his family dysfunction. Counsel retained Dr. Flynn, a psychotherapist and forensic consultant, who personally evaluated Spreitz, performed psychological assessments, and interviewed people who were familiar with him. Dr. Flynn submitted a report and testified extensively regarding Spreitz's alcohol and drug addictions, his family history of substance abuse, his disruptive childhood, and his emotional problems. Thus, the majority's suggestion that Spreitz's case is comparable to those in which we have found evidence of longstanding substance abuse to be substantially mitigating is misplaced. This is particularly so in light of the horrific way in which Ruby Reid died, the impact of which

was not lost on all of the Arizona judges who reviewed this record.

## D

Lastly, Spreitz's own arguments on appeal belie the conclusion that his long-term substance abuse unrelated to the crime was *central* to his plea for leniency. Spreitz argues that whether he "was intoxicated at the time of the murder was *critical*" to his case, and that "the issue of [his] intoxication [at the time of the crime] was critically important." He contends that he "was highly intoxicated at the time of the murder" and that "this was the *primary* cause of him committing the murder." And, he urges that there "was ample evidence that [he] was highly intoxicated at the time of the murder and that his intoxication contributed *directly* to his actions." "This was *highly relevant* mitigation," he says: "[h]ad the judge heard the evidence described herein, it is highly probable that he would *not* have sentenced [Spreitz] to death." But the judge did hear all of that evidence. He just didn't buy the argument based on the testimony of officers who interacted with Spreitz before and after he killed Ms. Reid. That credibility determination is not assailable on appeal.

Spreitz's defense theories have shifted on collateral appeal. Contrary to his position in supplemental briefing ordered by this Court post-*McKinney*, Spreitz does not make any similar arguments about his long-term substance abuse as a *non-statutory* mitigating factor. Instead, he claims that evidence of his childhood head injuries that his counsel failed to present were *vital* to his mitigation evidence. Spreitz argues that the "importance of counsels' failure to investigate [his] history of head injuries cannot be overstated;" that the "connection between childhood head injuries and impulsive murder" was "well established" at the

time of sentencing; that "there was a correlation between [his] head injuries as a child and his impulsive behavior in the instant case;" and that "[expert] testimony could have enlightened the court as to the connection between childhood head injuries and impulsive behavior in murderers in general, and could have developed the link between [Spreitz]'s own head injuries and his impulsive behavior during this murder in particular." He contends that:

> The murder in this case was a classic impulsive act. It was not thought out or premeditated beforehand. Appellant beat the victim with a rock; he did not even bring a weapon. The victim refused to have sex with him, fought him, and he became enraged and impulsively killed her. That is the *classic behavior* of a murderer who suffered childhood head injuries.

(Emphasis added.) Spreitz's shifting defense theories undermine his latest argument that long-term substance abuse was central to his plea for leniency all along.

We will never know how Ruby Reid, forced into the trunk of Spreitz's car and pondering her fate as he drove her into the desert, would have answered any of Spreitz's contentions. But the forensic evidence of the way in which she died stands in silent, but compelling refutation of that defense. Simply put, Spreitz cannot show on this record that his long-term substance abuse, as a non-statutory mitigating factor and without any connection to the crime, was either "central to his plea for leniency," *McKinney*, 813 F.3d at 823, or at "the very core of [his] plea for life," *Coleman*, 210 F.3d at 1051. Therefore, he cannot demonstrate that the Arizona courts' alleged failure to consider that evidence

substantially influenced or swayed his ultimate sentence. Nor can he show that, had the Arizona courts further considered its marginal mitigating weight, the evidence would have substantially affected the outcome of his sentence. *See Brecht*, 507 U.S. at 623. Because Spreitz cannot show that the error he alleges was not harmless, the district court's denial of habeas relief on Spreitz's *Eddings* claim should be affirmed.

From the majority's conclusion otherwise, I respectfully dissent.